**Ernest F. BORUSKI, Jr., Petitioner-Appellant,**

v.

**SECURITIES AND EXCHANGE COMMISSION and National Association of Securities Dealers, Inc., Respondents-Appellees.**

No. 312, Docket 26585.

United States Court of Appeals
Second Circuit.

Argued March 24, 1961.

Decided April 13, 1961.

Howard S. Dorris, Segal & Dorris, Flushing, N. Y., for petitioner-appellant.

Mitchell S. Rieger, Associate Gen. Counsel, Chicago, Ill. (Walter P. North, Gen. Counsel, Ellwood L. Englander, Sp. Counsel, Ned B. Stiles, Atty., Washington, D. C., on the brief), for respondents-appellees.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Petitioner, a member of the National Association of Securities Dealers (NA SD), asks this court (1) to review an order of the Securities and Exchange Commission (SEC) dismissing proceedings to review the order of the NASD which suspends petitioner from membership for 60 days and assessing costs against him and (2) to direct the SEC (a) to set aside the actions of NASD;

(b) to cancel costs; and (c) to reinstate petitioner as an NASD member.

The proceedings against petitioner were initiated in January, 1958, by the District Business Conduct Committee of District No. 12 of the NASD (the Committee) in a complaint which charged in substance (1) failure to keep and maintain adequate books and records; (2) failure to reveal to his customers the capacity in which he was acting; (3) sales of investment company shares at improper prices; and (4) delivery to prospective customers of sales literature which contained material which violated certain provisions of the SEC's Statement of Policy and the NASD's Rules of Fair Practice. The Committee censured petitioner, suspended him for 60 days, and assessed costs.* The Board of Governors of NASD reviewed the entire record and concluded that the practices of petitioner were "inconsistent with just and equitable principles of trade." The SEC, after making its own independent review of the record, made findings in substantial agreement with those of NA SD and dismissed the proceedings for review.

Petitioner here contends that the failure of NASD to object to his bookkeeping methods during preceding years constituted an interpretation that they were proper; that he sufficiently disclosed his capacity by printing the words "Lic. Mutual Funds Investment Broker" on his stationery; and that his sales literature was not for the public but was intended to be only part of a training kit for his many salesmen and, therefore, did not have to be filed with the NASD. Examination of the literature discloses many statements and representations concerning the merits of purchasing mutual fund shares which violate the SEC's Statement of Policy. This literature was obviously designed to be used by petitioner's salesmen in presenting to their potential customers reasons for buying the

---

\* The third charge, concerning sales of mutual fund shares at improper prices, was dismissed by the District Business Conduct Committee as not supported by sufficient evidence in the record. Hence, only the findings with respect to charges 1, 2 and 4 are considered here.

**740**

shares. Moreover, the salesmen themselves were prospective customers so that as to them the literature was "to induce the purchase of shares of an investment company" (Statement of Policy).

 Petitioner, himself employed on a full-time basis outside of the securities field, devoted his spare time to the selling of mutual fund shares. He recruited his salesmen by inserting newspaper advertisements and by promotional literature. Ninety-five percent or more of these "Salesmen" were without previous experience in the securities business. In assuming the responsibility of sending such salesmen out amongst the general public to proclaim the merits of these shares, it was of vital importance, in order to avoid the possibilities of overstatement or fraud, that petitioner also assume the responsibility of observance of the protective provisions of the Statement of Policy designed to safeguard the purchasing public. The SEC's findings of violation of Section 1 of Article III of the NASD Rules of Fair Practice and conduct inconsistent with just and equitable principles of trade within the meaning of Section 15A(h) (1) of the Act [1] are amply supported by the facts.

Merely because petitioner conducted his mutual shares business in his spare time is no reason for a substantial deviation from accepted bookkeeping standards and practices. Nor did the failure of the NASD to advise petitioner of non-compliance operate as an estoppel [2] or an implied admission that his books were in approved form.

The Rules of the SEC [3] and the NASD [4] set forth the disclosures which a broker-dealer must make with respect to the capacity in which he is acting. The statement on the letterheads used by

petitioner "Lic. Mutual Funds Investment Broker" cannot possibly be construed as even attempted compliance.

Under the circumstances, petitioner's suspension for 60 days and the imposition of costs did not constitute an excessive and oppressive penalty. The public interest requires that appropriate sanctions be imposed to secure compliance with the rules, regulations and policies of both NASD and SEC. The penalty fixed by the NASD and approved by the SEC was within their discretion and certainly did not exceed proper bounds.

The order of the Securities and Exchange Commission is affirmed.

---

1. Securities Exchange Act of 1934, 15 U.S.C.A. § 78o-3(h) (1).

2. Klein v. Securities and Exchange Commission and N. A. S. D., 2 Cir., 224 F. 2d 861, is not to the contrary. That case was decided on the specific facts there presented—namely, implied approval of a 50% mark-up. Its holding cannot be extended to implied approval of an inadequate bookkeeping system because of failure to object.

3. Rule 15c1-4 of the SEC, 17 CFR 240.-15c1-4.

4. Section 12 of Article III of the NASD's Rules of Fair Practice.