**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**AIR CONTACT TRANSPORT INCORPORATED, Respondent.**

No. 03–2513.

United States Court of Appeals, Fourth Circuit.

April 11, 2005.

Argued: March 7, 2005.

Decided: April 11, 2005.

**ARGUED:** Steven R. Weinstein, Becker Meisel, L.L.C., Livingston, New Jersey, for Respondent. David S. Habenstreit, National Labor Relations Board, Office of the General, Washington, D.C., for Petitioner. **ON BRIEF:** Arthur F. Rosenfeld, General, John E. Higgins, Jr., Deputy General, John H. Ferguson, Associate General, Aileen A. Armstrong, Deputy Associate General, Jeffrey M. Hirsch, National Labor Relations Board, Washington, D.C., for Petitioner.

Before WILKINS, Chief Judge, and WILLIAMS and TRAXLER, Circuit Judges.

Application for enforcement granted by published opinion. Judge WILLIAMS wrote the opinion, in which Chief Judge WILKINS and Judge TRAXLER joined.

## OPINION

WILLIAMS, Circuit Judge:

The National Labor Relations Board (Board) seeks enforcement of an order against Air Contact Transport, Inc. (Air Contact). The order concluded that Gary Goode (Goode), a former Air Contact employee, had engaged in protected concerted activities under § 7 of the National Labor Relations Act (NLRA or Act), 29 U.S.C.A. § 157 (West 1998), by asking management questions on behalf of himself and his coworkers, despite the fact that he asked the questions in a "loud" and "boisterous" manner. It also concluded that Air Contact's letter to Goode, which informed him that his manner of speaking was unacceptable to it, reasonably tended to coerce him from exercising his § 7 rights in violation of § 8(a)(1) of the NLRA, 29 U.S.C.A. § 158(a)(1) (West 1998). Finally, it concluded that Goode's termination for failing to acknowledge the letter also violated § 8(a)(1). For the reasons that follow, we grant the application for enforcement.

## I.

Air Contact, a freight transportation company, employed Goode as a delivery truck driver at its Lorton, Virginia terminal. On August 10, 2000, Air Contact held a going-away party for one of its employees at a local restaurant. Vince DeCarlo, Air Contact's General Manager, attended the party. As the party was winding down, DeCarlo, as he customarily did at employee functions, asked the employees still present if they had any questions on work-related matters. Goode raised his hand and asked a number of questions pertaining to pay and benefits "on behalf [of himself] and other co-workers." (J.A. at 18.) Goode began talking in a "loud"

and "boisterous" voice in the course of the ensuing discussions, which lasted about an hour. (J.A. at 81, 217). While DeCarlo was responding to one of Goode's questions, Goode muttered "baloney" to a fellow employee, (J.A. at 100), but there is no evidence that DeCarlo either heard or later became aware of this statement.[1]

On Friday, September 22, 2000, over a month after the going-away party, DeCarlo sent a letter to Goode responding to the substance of the pay-related questions Goode asked at the restaurant. The letter also addressed what DeCarlo perceived as the disrespectful tone of Goode's voice. The letter stated Goode was "very public in [his] loud voicing of [his] discontent" and that the "challenging, loud, animated and insubordinate tone [was] embarrass[ing to DeCarlo]." (J.A. 351.) The letter suggested Goode should "survey other companies" because "[i]t is possible that somewhere there is something better or more attractive." (J.A. 351.) The letter also stated, however, "[i]t is your absolute right to talk to whomever you please regarding pay and benefit related issues. . . . [W]e always appreciate well-intended and helpful input." (J.A. at 351.) DeCarlo instructed Mike Rish, Goode's immediate supervisor, to ensure that Goode signed the letter as an acknowledgment of his receipt and understanding of it. Goode refused to sign the letter, asserting that he did not agree with DeCarlo's assertions that he had been insubordinate at the party.

On Friday, September 29, 2000, Bradford Honingsberg, Air Contact's president, called Goode at home to discuss why Goode had not signed the letter, which Honingsberg called a "reprimand". (J.A. at 37.) During this conversation, Goode again refused to sign the letter and maintained that he did not agree with the assertions therein. Honingsberg informed Goode that if he did not sign the letter, Air Contact would be "cutting ties" with him. (J.A. at 386.) Upon hearing this statement, Goode hung up the phone. On Monday, October 2, Goode reported to work, and Rish informed him that he had been fired.

Goode filed a charge with the Board, and a complaint issued against Air Contact. An ALJ conducted a hearing on the matter, and, on July 31, 2002, issued an order in Goode's favor. First, the ALJ concluded that Goode had engaged in protected activity under § 7 at the restaurant. Second, the ALJ concluded that Goode did not lose the protections of § 7 by his manner of speaking. Third, the ALJ concluded that the September 22 letter was "disciplinary" and therefore tended to coerce Goode from taking further protected activity in violation of § 8(a)(1). Fourth, the ALJ concluded that Air Contact also had violated § 8(a)(1) by terminating Goode. With respect to this fourth conclusion, the ALJ found that Air Contact had impermissibly fired Goode under *Wright Line*, 251 N.L.R.B. 1083 (1980) (applying a burden-

---

1. While Goode testified that he spoke loudly only because the restaurant was noisy, there was testimony from one of Goode's coworkers that Goode was not simply speaking loudly because of the background noise in the restaurant but rather that he also became "boisterous" in the course of the discussion with DeCarlo. (J.A. at 217.) The ALJ failed to resolve this factual dispute. While we do not approve of the ALJ's failure to make specific findings of fact on disputed issues relevant to resolution of Goode's claim, we do not believe that remand for such findings is warranted here. Instead, we will assume that the ALJ resolved this dispute by viewing the facts in the light most favorable to Air Contact, the party against whom enforcement is sought, and do the same. *See Sun Shipbuilding & Dry Dock Co. v. McCabe*, 593 F.2d 234, 239 (3d Cir.1979) (viewing facts in the light most favorable to the claimants when reversing ALJ's decision awarding relief to claimants).

shifting proof scheme to cases involving allegations of unlawful motive), *enforced* 662 F.2d 899 (1st Cir.1981), *approved in NLRB v. Transp. Mgm't Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983), *as modified in Office Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 276–78, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994), because Air Contact did not rebut the prima facie § 8(a)(1) case of unlawful termination. In addition, the ALJ found that Air Contact's termination of Goode was unlawful under *Kolkka Tables*, 335 N.L.R.B. 844 (2001) (holding that a discharge is unlawful if it resulted from a refusal to comply with an employer's order that itself interfered with the employee's § 7 rights), because the September 22 letter was unlawful, thus making Goode's failure to sign it an improper basis for his discharge.

On September 30, 2003, the Board affirmed the ALJ's findings in whole and his conclusions as modified. With respect to the ALJ's fourth conclusion—that Air Contact's termination of Goode violated § 8(a)(1)—all three members of the Board affirmed under *Kolkka Tables*, while one member also would have affirmed on the ground on which the ALJ relied, *i.e.*, that Air Contact did not rebut the prima facie case under *Wright Line*. The Board's order required Air Contact to reinstate and reimburse Goode.

On December 12, 2003, General Counsel to the Board filed an application for enforcement, which Air Contact opposed.

## II.

In contesting the Board's application for enforcement, Air Contact concedes that the content of Goode's speech was protected but argues that there was not substantial evidence in the record to support the Board's conclusions that (1) Goode did not lose the protections of the NLRA by his manner of speaking at the party, (2) the September 22 letter was coercive, and (3) the termination of Goode for failing to sign the letter was unlawful. The Board's legal interpretations of the NLRA are entitled to deference so long as they are "rational and consistent" with the Act. *Consol. Diesel Co. v. NLRB*, 263 F.3d 345, 352 (4th Cir.2001) (quoting *NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 787, 110 S.Ct. 1542, 108 L.Ed.2d 801 (1990)). We must affirm the Board's factual findings if they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C.A. § 160(e) (West 1998); *Consol. Diesel*, 263 F.3d at 351. Likewise, we review mixed questions for substantial evidence where the Board's legal interpretations are otherwise valid. *See Wal–Mart Stores, Inc. v. NLRB*, 173 F.3d 233, 240 (4th Cir.1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Alpo Petfoods, Inc. v. NLRB*, 126 F.3d 246, 250 (4th Cir.1997) (internal quotation marks omitted). "If such evidence exists, we must uphold the Board's decision 'even though we might have reached a different result had we heard the evidence in the first instance.'" *Id.* (quoting *NLRB v. Gen. Wood Preserving Co.*, 905 F.2d 803, 810 (4th Cir.1990))

With these principles in mind, we turn to Air Contact's arguments.

## A.

Air Contact does not quarrel with the Board's conclusion that the *content* of Goode's speech at the party was concerted, and therefore protected, activity under § 7. Rather, it contends that the Board erred in concluding that the *manner* in which Goode spoke was also protected. In particular, it argues that because Goode became loud and boisterous while asking

his otherwise-protected questions, his conduct was so insubordinate as to remove the protection of § 7. We disagree.

Section 7 of the NLRA provides that employees "have the right to self-organization ... and to engage in other concerted activities for the purpose of ... mutual protection." 29 U.S.C.A. § 157. In *NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962), the Supreme Court examined whether an employee's insubordinate conduct undertaken in the course of other activity protected by § 7 can remove the protections of that section. In *Washington Aluminum*, the employer had refused to provide adequate heating in its workplace. *Id.* at 10–11, 82 S.Ct. 1099. On a particularly cold day, a group of employees organized and walked off the job, and the employer discharged them. *Id.* at 11–12, 82 S.Ct. 1099. The employer argued that it did not terminate the employees because of their concerted activity, but rather because they had violated its absentee policy by leaving work. *Id.* at 16, 82 S.Ct. 1099. The Supreme Court rejected this argument, noting:

> It is of course true that § 7 does not protect all concerted activities.... [But] the activities engaged in here do not fall within the normal categories of unprotected concerted activities such as those that are unlawful, violent, or in breach of contract. Nor can they be brought under this Court's more recent pronouncement which denied the protection of § 7 to activities characterized as "indefensible" because they were found to show a disloyalty to the worker's employer which this Court deemed unnecessary to carry on the workers' legitimate concerted activities.

*Id.* at 17, 82 S.Ct. 1099 (footnotes omitted).

In *NLRB v. Waco Insulation, Inc.*, 567 F.2d 596 (4th Cir.1977), we had occasion to apply *Washington Aluminum*. In *Waco Insulation*, an employee, speaking on behalf of his coworkers, requested a raise from the employer. *Id.* at 598. The tenor of the conversation "escalated and became heated," and the employee was later fired. *Id.* at 599. The employer asserted that the employee's insubordination, as evidenced by the heated conversation, made his request for a raise unprotected under § 7. *Id.* We rejected this argument, concluding instead that "while perhaps imprudent, [the employee's] conduct was not unlawful, violent, in breach of contract, or indefensible.... *Although the discussion became loud, this alone was not enough to constitute insubordination.*" *Id.* at 599 (emphasis added). *See also Anheuser-Busch, Inc. v. NLRB*, 338 F.3d 267, 280 (4th Cir.2003) (noting that "an employee ... can lose [§ 7's] protections if his conduct is so egregious as to take it outside the protection of the Act, or of such a character as to render the employee unfit for further service" (internal quotation marks omitted)). *Cf. Media Gen. Operations, Inc. v. NLRB*, 394 F.3d 207, 211–13 (4th Cir.2005) (holding that an employee who called his employer a "racist," "b____d," and "red-neck son-of-a-b___h" fell outside of § 7 because he committed acts "of such a serious character as to render [him] unfit for further service" (internal quotation marks omitted)).

■ The Board concluded that Goode's conduct was not so egregious as to remove him from § 7. There is substantial evidence in the record to support this conclusion. In the course of his undisputedly protected activity, Goode simply became loud and boisterous. Such actions alone are not enough to make § 7 inapplicable. *See Waco Insulation*, 567 at 599. Goode did not curse at DeCarlo, *cf. Media General*, 394 F.3d at 213, and the record supports the Board's conclusion

that his behavior, while perhaps imprudent, was neither "indefensible," *Washington Aluminum,* 370 U.S. at 17, 82 S.Ct. 1099, nor "egregious," *Anheuser–Busch,* 338 F.3d at 281. We therefore affirm the Board's conclusion that Goode's conduct was protected by § 7.

.B.

Air Contact's second argument is that even if Goode's actions at the restaurant were protected under § 7, its September 22 letter did not violate § 8(a)(1) because it was not a "disciplinary" letter. Instead, it argues, the letter was a friendly "counseling" letter because it did not take or threaten adverse employment action against Goode, and therefore was not coercive. We again disagree with Air Contact.

■ Section 8(a)(1) of the NLRA makes it unlawful for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [§ 7]." 29 U.S.C.A. § 158(a)(1). Our test for determining whether an employer violates § 8(a)(1) is "whether, 'under all of the circumstances, the employer's conduct may reasonably tend to coerce or intimidate employees' " from exercising their § 7 rights. *Medeco Sec. Locks, Inc. v. NLRB,* 142 F.3d 733, 745 (4th Cir.1998) (quoting *NLRB v. Grand Canyon Mining Co.,* 116 F.3d 1039, 1044 (4th Cir.1997)) [T]he test is not whether the employer's action was coercive in fact, but whether it reasonably tends to coerce or deter the exercise [of protected rights]." *Id.*

We note that the case law draws a distinction between "counseling" and "disciplinary" measures taken by employers against employees in some situations. *See, e.g., Davis v. Town of Lake Park, Florida,* 245 F.3d 1232, 1240 (11th Cir.2001); *Whirlpool Corp.,* 337 N.L.R.B. 726, 739 (2002). A counseling measure expresses "concern and criticism," without having

any "tangible consequences" on the "terms and conditions" of employment, *Davis,* 245 F.3d at 1240, while a disciplinary measure is a "reprimand" that can either have, or be the foundation for future, tangible effects on the terms and conditions of employment. *Id.; Whirlpool Corp.,* 337 N.L.R.B. at 739. The cases turning on this distinction, however, apply it while interpreting either 42 U.S.C.A. § 2000e–2 (West 2003) or § 8(a)(3) of the NLRA, 29 U.S.C.A. § 158(a)(3) (West 1998). *Davis,* 245 F.3d at 1240 (Section 2000e–2); *Whirlpool Corp.,* 337 N.L.R.B. at 739 (Section 8(a)(3)). Section 2000e–2 makes it unlawful "to discriminate against any individual with respect to his compensation, *terms, conditions,* or privileges of employment" on the basis of membership in a protected class. 42 U.S.C.A. § 2000e–2(a)(1) (emphasis added). Likewise, § 8(a)(3) prohibits "discrimination in regard to hire or tenure of employment or any *term or condition* of employment to encourage or discourage membership in any labor organization." 29 U.S.C.A. § 158(a)(3) (emphasis added). As the court in *Davis* and the Board in *Whirlpool Corp.* concluded, it is reasonable to interpret these sections to provide that an adverse employment action that merely counsels the employee is not in violation of law, even if the employer has unseemly motives, where the adverse action does not actually affect the terms or conditions of employment. *Davis,* 245 F.3d at 1240; *Whirlpool Corp.,* 337 N.L.R.B.. at 739..

■ The reasoning underlying the distinction between counseling and disciplinary measures in cases interpreting §§ 2000e–2 and 8(a)(3), however, does not apply under § 8(a)(1), which does not address employer interference with the *terms or conditions* of employment, but rather provides redress for *any* employment action that *tends to coerce* an em-

ployee not to engage in § 7 activities. *See* 29 U.S.C.A § 158(a)(1) (making it unlawful "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [§ 7]"). Under our legal standard interpreting § 8(a)(1), a so-called "counseling" measure, while not affecting the terms or conditions of an employee's job, could nevertheless coerce an employee from exercising his § 7 rights. Whether an employment action is labeled as "counseling" or "disciplinary" is therefore not dispositive. Rather, in analyzing claims under § 8(a)(1), the issue is not the label placed on the employer's action, but whether the action tends to coerce *vel non. See e.g., Fairfield Community Hosp.*, 311 N.L.R.B. 401, 405 (1993) (holding that a report from the employer to the employee that did not create or threaten discipline was coercive in violation of § 8(a)(1), but did not violate § 8(a)(3) because it did not affect the terms or conditions of employment).

While these labels are therefore not outcome determinative, they may nevertheless be useful in § 8(a)(1) cases. As discussed, the Board need not find that the employer took a disciplinary measure against the employee on the basis of the employee's protected activity to conclude that the employer violated § 8(a)(1). A finding that the employer did take such action, however, *requires* a finding that the employer coerced in violation of § 8(a)(1). When an employer takes a disciplinary measure against an employee on the basis of his participation in protected activity—a measure that affects the terms and conditions of the employment—that measure necessarily coerces the employee from engaging in protected activities. *See Medeco Sec.*, 142 F.3d at 747 n. 4 ("a ' § 8(a)(3) violation necessarily involves a derivative violation of § 8(a)(1)' " (quoting *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 698 n. 4, 103 S.Ct. 1467, 75 L.Ed.2d 387

(1983))). By definition, then, a disciplinary measure targeting protected activity coerces in violation of 8(a)(1). *Id.*

■ Here, the Board concluded that the September 22 letter was a disciplinary, and not a counseling, measure, and that it therefore violated § 8(a)(1). While we believe that this is a close case, we hold that the conclusion that the letter was disciplinary is supported by substantial evidence. The letter sharply criticized Goode's actions at the restaurant and informed him that he should "survey other companies" because "[i]t is possible that there is something better or more attractive." (J.A. at 351.) The Board concluded that this language "clearly indicated that Goode's conduct was incompatible with continued employment [at Air Contact]" and, therefore, could have served as the grounds for future termination. (J.A. at 387 n. 8.) This conclusion is buttressed by the fact that Air Contact went to great lengths—even calling Goode at home—to ensure that Goode signed the letter, and ultimately terminated him for failing to do so. Moreover, Honingsberg himself informed Goode that the letter was a "reprimand," (J.A. at 37), and DeCarlo testified before the ALJ that the memo was of the "disciplinary-type," (J.A. at 251). This evidence is inconsistent with a finding that the letter was simply a counseling measure. We therefore conclude that there was substantial evidence in the record to support the Board's conclusion that the September 22 letter was disciplinary, and therefore coercive in violation of § 8(a)(1).

Air Contact points out that the letter also stated that Goode had an "absolute right to talk to whomever [he] please[d] regarding pay and benefit related issues." (J.A. at 351.) It argues that this portion of the letter clarifies that the purpose of the letter was not to coerce Goode from engag-

ing in protected speech, but rather to criticize the manner in which he did so. But this is nothing more than a rephrasing of its argument that Goode's conduct was unprotected under § 7. A letter that attempts to distinguish between an employee's protected discussion and his conduct, which we have held is also protected, is no less coercive than one that fails to make such a distinction. As we have noted in a parallel context, "[w]ere we to conclude otherwise, the statutory guarantee [of § 7] would be eviscerated. There would be nothing left of § 7 rights if every time employees exercised them in a way that was somehow offensive to someone, they were subject to coercive proceedings...." *Consol. Diesel,* 263 F.3d at 354. We therefore again reject Air Contact's argument that its purported distinction between protected and unprotected activity has any basis in law on the facts of this case.[2]

### C.

█ Air Contact's final argument is that the Board erred in finding Goode's termination violated § 8(a)(1). In particular, it argues that the Board's legal analysis was erroneous because it applied *Kolkka Tables,* not *Wright Line,* to the claim. Some background information is useful to understand why we reject this argument.

In *Kolkka Tables,* an employer instructed its employee to remove union stickers from his personal lunch box. 335 N.L.R.B.

at 848. The employee refused, and the employer suspended him. *Id.* The employee refused to leave the premises, and the employer had the police escort him off the property. *Id.* Before the Board, the employee asserted that the employer violated § 8(a)(1) by suspending him. In response, the employer argued that the employee was insubordinate both in failing to remove the stickers and in failing to leave the premises. The Board rejected the employer's response, finding first that having the stickers on his lunch box was protected activity under § 7. *Id.* at 849. Second, it found that the employer could not lawfully suspend the employee for refusing to remove the stickers, because the order to remove the stickers itself infringed on the employee's rights under § 7. *Id.* Third, it found that the employer could not lawfully suspend the employee for refusing to leave the premises because he would not have been ordered to leave the premises but for the employer's illegal order to remove the stickers. *Id.*

The rule that emerges from *Kolkka Tables* is that an employer may not take coercive action against an employee either for refusing to comply with a policy that either itself deters protected activity or for refusing to comply with a neutral policy that was enforced because of the employee's protected response to the employer's illegal coercive action. While we have never had the occasion expressly to adopt

2. An employer whose actions are coercive does not necessarily violate § 8(a)(1). Rather, the employer may justify his coercion by offering a "substantial and legitimate business reason [for the coercion] that outweighs the employee's § 7 rights." *Medeco Security Locks, Inc. v. NLRB,* 142 F.3d 733, 745 (4th Cir.1998). "It is only when the interference with § 7 rights outweighs business justification for the employer's action that § 8(a)(1) is violated." *Textile Workers Union of Am. v. Darlington Mfg. Co.,* 380 U.S. 263, 269, 85

S.Ct. 994, 13 L.Ed.2d 827 (1965). Other than to suggest that its criticism of Goode in the September 22 letter was warranted by his behavior, Air Contact does not argue that it had a "substantial and legitimate business reason" for the letter. We reject this argument for a similar reason as that noted in the text—Goode's conduct, like his questioning, was protected under § 7, and an employer does not have a "substantial and legitimate business reason" in deterring protected activity.

*Kolkka Tables*, we have approved of its holding in earlier cases. *See e.g., Medeco Sec.*, 142 F.3d at 748 ("Because we hold that [the employer's] 'confidentiality [policy]' violates § 8(a)(1), it is also clear that [the employee's] termination for his breach of this confidentiality also violates § 8(a)(1)."); *NLRB v. M & B Headwear Co.*, 349 F.2d 170, 174 (4th Cir.1965) ("An employer cannot provoke an employee to the point where she commits ... an indiscretion ... and then rely on this [indiscretion] to terminate her employment.").

In *Wright Line*, the Board applied a burden-shifting test to determine whether an employer took unlawful employment action against an employee in violation of the NLRA. Under that test, the General Counsel must first "make a prima facie showing sufficient to support the inference that protected conduct was a motivating factor in the employer's decision" to take action against the employee. 251 N.L.R.B. at 1089 (internal quotation marks omitted). If the General Counsel does so, the employer may nevertheless escape liability if it can "demonstrate that the same action would have taken place even in the absence of the protected conduct." *Id.* "If the Board believes the employer's stated lawful reasons are non-existent or pretextual, the [employer's] defense fails." *USF Red Star, Inc. v. NLRB*, 230 F.3d 102, 106 (4th Cir.2000).

The *Wright Line* test was designed to account for the fact that employers rarely admit that they took adverse action against employees with the unlawful intent to discriminate. 251 N.L.R.B. at 1083. It therefore applies in situations where the employer's motive is at issue, such as cases where the employee claims that the employer took action against him for engaging in protected activity and the employer claims that it took action against the employee for some other reason. *See id.*

Where, however, the employer claims that it took action against the employee for alleged misconduct *associated* with protected activity, there is no need to apply *Wright Line. See Shamrock Foods Co. v. NLRB*, 346 F.3d 1130, 1136 (D.C.Cir.2003) (holding that "Wright Line is inapplicable to cases ... in which the employer has discharged the employee because of alleged misconduct in the course of protected activity" (internal quotation marks omitted)). This is so because the relevant inquiry in such a case is not whether the employer had an impermissible motive, but whether the employee's misconduct removed the protection of § 7. *See id.* If it did not, and the employer terminated the employee because of that misconduct, the employer has violated § 8(a)(1): by arguing it terminated the employee because of protected conduct, the employer has *admitted* it had the motivation to deter the employee's protected activity. *See id.*

As the above discussion makes clear, the Board's decision to apply *Kolkka Tables*, and not *Wright Line*, to the claim that Goode's termination violated § 8(a)(1) was rational and consistent with the Act. Air Contact argues that its reason for terminating Goode was not that he was exercising his § 7 rights at the restaurant, but that he was insubordinate for failing to sign the September 22 letter. On the surface, this argument appears to present questions of intent. But under *Kolkka Tables*, Air Contact's admission that it terminated Goode for failing to comply with its signature policy with respect to the unlawful letter establishes that Air Contact had an improper motive, because an employer who takes coercive action against an employee for failing to comply with an unlawful policy violates § 8(a)(1). 335 N.L.R.B. at 849. *See also M & B Headwear*, 349 F.2d at 174. Because motive is not in dispute, *Wright Line* is inapposite,

and the Board therefore did not err in refusing to apply it.

## III.

For the foregoing reasons, we grant the Board's application for enforcement.

*APPLICATION FOR ENFORCE-MENT GRANTED*