**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-1878**

---

SUNRISE SENIOR LIVING, INCORPORATED,

Petitioner,

versus

NATIONAL LABOR RELATIONS BOARD,

Respondent.

---

**No. 05-1933**

---

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

versus

SUNRISE SENIOR LIVING, INCORPORATED,

Respondent.

---

On Petition for Review and Cross-petition for Enforcement of an
Order of the National Labor Relations Board. (8-CA-34969; 8-CA-
35060)

---

Argued: March 16, 2006                  Decided: May 31, 2006

---

Before LUTTIG,[*] WILLIAMS, and MICHAEL, Circuit Judges.

———————

Petition for review denied; cross-petition for enforcement granted by unpublished per curiam opinion.

———————

**ARGUED:** Frederic Freilicher, HUNTON & WILLIAMS, L.L.P., McLean, Virginia, for Petitioner/Cross-Respondent. Christopher Warren Young, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent/Cross-Petitioner. **ON BRIEF:** Thomas P. Murphy, HUNTON & WILLIAMS, L.L.P., McLean, Virginia, for Petitioner/Cross-Respondent. Arthur F. Rosenfeld, Acting General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Meredith L. Jason, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent/Cross-Petitioner.

———————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

———————

[*]Judge Luttig heard oral argument in this case but resigned from the court prior to the time the decision was filed. The decision is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

PER CURIAM:

Lead care aides at a Sunrise Senior Living, Inc. assisted living facility circulated a petition criticizing work conditions and planned (but failed to execute) a day-long strike. In response, managers persistently interviewed all of the aides to identify who spearheaded these efforts, then fired one of the lead aides and demoted another one. The National Labor Relations Board determined that Sunrise committed unfair labor practices in violation of section 8(a)(1) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1), by coercively interrogating the aides and by improperly taking action against the lead aides for engaging in activity protected under section 7 of the Act, 29 U.S.C. § 157. The Board's remedial order required Sunrise, among other things, to reinstate the fired aide with full back pay. Sunrise petitions this court for review, seeking to overturn the Board's decision and order, and the Board cross-petitions for enforcement. Concluding that substantial evidence supports the Board's decision and order and that its remedy was not arbitrary and capricious, we deny Sunrise's petition and grant the Board's cross-petition.

I.

Sunrise is a Delaware corporation with principal offices in McLean, Virginia. The company operates nearly 370 senior living

3

facilities in the United States, including the 68-resident assisted living facility in Parma, Ohio, where this case arose. The Parma facility's residents depend in varying degrees on the care aides for help with the basic routines of life (for example, dressing, bathing, and use of the toilet). The aides, including the designated lead care aides, are not professional nurses. They are not represented by a union.

A.

Susan Johnson became executive director of the Parma facility on March 1, 2004. At a meeting that week she informed the care aides that a former resident who was scheduled to return to the facility would need assistance with handling her colostomy bag. Rosie Howard, a supervisor of the care aides, expressed concern that the aides would object to being assigned to the colostomy bag emptying routine. On March 9 three lead care aides -- Samantha Reyes, Coty Smith, and another employee -- met with Johnson to present her with a petition. Signed by 24 aides, the petition declared, "[W]e have talked among each other and have all agreed that we are unwilling to accept responsibility for any colostomy care. We do more than our share of work here." J.A. 936. The petition asserted that the care aides faced a long list of regular responsibilities and that the aides "are subjected to verbal abuse by angered family members, and were disrespected by the management

4

team."  Id.  The petition concluded:  "We as a group have all reached our limit in additional job assignments and hope this situation is addressed without further action needed."  J.A. 936-37.  After receiving the petition, Johnson asked the lead aides to identify the author of the document, but received no response.  She later discussed the petition with higher Sunrise executives.  They decided that Johnson would meet with the care aides in small groups to further investigate the petition.

That same day (March 9), in Howard's office and within her earshot, Reyes suggested that the care aides plan a work stoppage on March 11.  Smith discussed the work stoppage with care aide Cynthia Boldan, who said she would not participate.  Also that day, Johnson asked Howard what she knew about the petition and its authorship; Johnson raised her voice in disbelief when Howard professed no knowledge.  On March 10 Reyes told care aides Tania Kaufman, Lisa Dousa, and Olexandra Chepak that there would be a work stoppage the next day and that if they did not participate, they would be on duty by themselves.  They said they would not take part.  (Later, at the unfair labor practice hearing before the administrative law judge, Reyes repeatedly denied under oath that she discussed a work stoppage, but after Sunrise presented numerous contradicting witnesses, the ALJ found that Reyes's denials were not credible.)

5

Also on March 10 Johnson, accompanied by Sunrise executives Linda Olsavsky and Natalie Antosh, conducted interviews with the care aides in groups of three to five aimed at determining the petition's authors. One of the aides, Lisa Dousa, named Reyes and Smith as the authors. After the interviews Johnson learned of the work stoppage being discussed for the next day, so she called her supervisors and arranged for employees from other Cleveland-area Sunrise facilities to cover for the absent workers. Every care aide showed up for work on March 11. There was no strike. That morning, after Johnson called Smith to tell her to come in early, Smith called Dousa and asked her why Dousa had identified the petition authors. Dousa later told management about Smith's call.

On March 11 Johnson (joined at times by Antosh and Olsavsky) interviewed many of the care aides individually in her office, asking about the petition and the work stoppage. Several of the aides told Johnson that Reyes had discussed the strike with them. In her interview with Boldan, Johnson expressed disapproval of the petition, saying that the aides could have brought their grievances to her informally rather than committing them to writing. During the interviews at least two of the aides felt afraid of losing their jobs, while another came to regret signing the petition.

6

Johnson later placed Reyes, Smith, and Howard on paid administrative leave pending an investigation. On March 16 Sunrise demoted Smith to care aide, although it continued to pay her as a lead care aide. Sunrise fired Reyes. (On March 19 the company also fired Howard, but the ALJ determined that Howard's discharge was not an unfair labor practice, and her claim is not presented in this appeal.)

B.

Howard and the United Food & Commercial Workers Union Local 880 filed charges with the Board over Sunrise's conduct. The Board's General Counsel issued an administrative complaint alleging that Sunrise engaged in unfair labor practices violating the Act. See 29 U.S.C. § 158(a). The ALJ heard testimony during the unfair labor practice hearing in September and October 2004. The ALJ ruled for the General Counsel in March 2005, and Sunrise filed exceptions to the ALJ's decision and order.

In July 2005 the Board affirmed the ALJ's findings that Sunrise engaged in three unfair labor practices under section 8(a)(1) of the Act (1) when it fired Reyes and (2) demoted Smith (both of whom the Board concluded were engaged in protected activity under the Act in organizing the petition and the threatened strike), and (3) when Sunrise coercively interrogated the care aides in the interviews on March 10 and 11, 2004. To

remedy these unfair labor practices, the Board entered a cease-and-desist order. It declined to require Sunrise to restore Smith to her earlier position because she voluntarily resigned two months after her demotion. The Board concluded that the proper remedy for Sunrise's violation as to Reyes was to reinstate her and award her full back pay, even though the ALJ discredited Reyes's testimony that she never advocated a strike. 344 N.L.R.B. No. 151 (July 29, 2005), slip op. at 1.

Sunrise, which "transacts business" within this circuit pursuant to the Act's venue rule, 29 U.S.C. § 160(f), petitions for review of the Board's decision and order. Sunrise contends that the Board erred in concluding that Sunrise committed an unfair labor practice (1) by firing Reyes and ordering her reinstated with full back pay, even though the ALJ discredited her in part; (2) by demoting Smith, despite Sunrise's articulation of valid reasons unrelated to protected activity; and (3) by interviewing the aides in groups and individually, which Sunrise contends did not amount to coercive interrogation. The Board's cross-petition seeks enforcement of its decision and order.

Section 7 of the Act provides that employees "have the right to self-organization . . . and to engage in other concerted activities for the purpose of . . . mutual aid or protection." 29 U.S.C. § 157. These rights are secured by section 8(a)(1), which makes it an unfair labor practice for an employer "to interfere

8

with, restrain, or coerce employees in the exercise of the rights guaranteed in" section 7.  29 U.S.C. § 158(a)(1).  "The scope of our inquiry in reviewing the Board is limited." Medeco Sec. Locks, Inc., v. NLRB, 142 F.3d 733, 742 (4th Cir. 1998).  We uphold the Board's factual findings if, considering the whole record, they are supported by substantial evidence.  29 U.S.C. § 160(e); TNT Logistics of N. Am., Inc. v. NLRB, 413 F.3d 402, 405 (4th Cir. 2005).  In reviewing questions of law, we defer to the Board's interpretation of the Act "so long as its reading is a reasonable one."  RGC (USA) Mineral Sands Inc., v. NLRB, 281 F.3d 442, 448 (4th Cir. 2002) (quoting Holly Farms Corp. v. NLRB, 517 U.S. 392, 409 (1996)).

## II.

Sunrise first claims (a) that the Board erroneously determined that Sunrise's conduct toward Reyes was an unfair labor practice, and (b) that even if this conduct was an unfair labor practice, the Board's remedy was improper in that it failed to sanction Reyes in any way for her discredited testimony.

## A.

An employer violates section 8(a)(1) when "(1) [its] . . . action can be reasonably viewed as tending to interfere with, coerce, or deter (2) the exercise of protected activity, and (3)

9

the employer fails to justify the action with a substantial and legitimate business reason that outweighs the employee's [section] 7 rights." Medeco Sec. Locks, 142 F.3d at 745. Sunrise advances two arguments in contending that it did not violate section 8(a)(1) in firing Reyes: (1) she improperly pressured the aides in organizing the work stoppage and thereby lost the section 7 shield, and (2) Sunrise had a valid business justification for its action because if it had not responded decisively to the threatened strike, it would have risked violating a state statute safeguarding the health of the facility's residents.

1.

Reyes and Smith drafted a petition concerning their conditions of employment and advocated (but did not bring about) a day-long strike at the Parma facility. These activities are ordinarily concerted activities under section 7 because they constitute exercises of statutory rights such as "self-organization" and "mutual protection." In contrast, an employee's circulation of a petition to remove a supervisor for personal reasons is not concerted activity protected by the statute. Joanna Cotton Mills Co. v. NLRB, 176 F.2d 749, 753 (4th Cir. 1949). Sunrise contends that Reyes's motivation was to prevent her mother (one of the facility's aides) from having to take responsibility for the returning resident's colostomy care. The bare existence of such a motive, however, does not affect the analysis because the

petition and the threatened stoppage were predominantly directed at challenging collective work conditions. What matters is the activity's purpose, not a participating employee's motive. TNT Logistics, 413 F.3d at 407 (quoting id.); see also FiveCAP, Inc. v. NLRB, 294 F.3d 768, 783 (6th Cir. 2002) (circulation of a petition "seek[ing] the amelioration of work-related conditions" is protected activity).

How the activity is carried out also matters. In NLRB v. Washington Aluminum Co., 370 U.S. 9 (1962), the Supreme Court identified "normal categories of unprotected concerted activities such as those that are unlawful, violent, or in breach of contract." Id. at 17. The Court also characterized as unprotected those concerted activities that are "indefensible because they . . . show a disloyalty to the workers' employer" to a degree beyond that needed to pursue valid section 7 objectives. Id. We have understood this language to mean that section 7 does not shield employees whose "conduct is so egregious as to take it outside the protection of the Act, or of such a character as to render [employees] . . . unfit for further service." Anheuser-Busch, Inc. v. NLRB, 338 F.3d 267, 280 (4th Cir. 2003) (punctuation omitted). Such "egregious" conduct would include, for example, "threatening to kill a supervisor" or "stealing from an employer." Cf. Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137, 146 (2002) (giving these as examples of "serious [employee] misconduct"

11

that courts have held to preclude those employees from being reinstated under the Board's remedial orders).

Sunrise argues that when Reyes told the care aides about the planned March 11 work stoppage, she abused her authority and impermissibly pressured them to participate, thereby surrendering section 7 protection under Washington Aluminum. Substantial evidence, however, supports the Board's contrary determination. Chepak recalled that Reyes said to her on March 10, 2004, "[Y]ou can't come in tomorrow morning" and that Chepak should telephone other aides to tell them not to come in either. J.A. 509H. Yet neither Chepak's account nor anyone else's shows that Reyes threatened to punish any aide who did not participate in the work stoppage. Kaufman, another aide, described Reyes as "like, basically, kind of pressuring us into calling . . . off along with others," J.A. 480, but Kaufman hedged her characterization with qualifiers ("like . . . kind of"). Her description of Reyes's "pressuring" was not tantamount to evidence that Reyes engaged in an act that was so egregious as to remove the section 7 shield.

We therefore affirm the Board's conclusion that section 7 protected the actions of Reyes and Smith.

2.

When an employer disciplines an employee by changing employment conditions and terms in response to the employee's protected activities, the employer "necessarily coerces the

12

employee from engaging in protected activities." NLRB v. Air Contact Transport Inc., 403 F.3d 206, 213 (4th Cir. 2005). Such coercion violates section 8(a)(1) if the employer does not demonstrate it had a "substantial and legitimate business reason" for its conduct that outweighs the employee's rights. Medeco Sec. Locks, 142 F.3d at 745.

Sunrise's challenge draws on language from the Supreme Court's opinion in Hoffman Plastic, where the Court refused to allow the Board to award back pay to illegal alien employees to remedy the employer's unfair labor practices because federal immigration law expressly prohibited employing aliens not lawfully in (or authorized to work in) the United States. Hoffman Plastic, 535 U.S. at 147-49. The Court concluded that the Board's "remedy may be required to yield" when that remedy "trenches upon a federal statute or policy outside the Board's competence to administer." Id. at 147. From this starting point Sunrise argues that the Board erred in failing to acquiesce to Sunrise's need to comply with state health care law. In essence, Sunrise characterizes the state legal requirements as a "substantial and legitimate business reason" for its conduct toward Reyes and the other aides. The Board's failure to validate the state law requirements, in Sunrise's view, "trenches upon" the state regulatory scheme, as Hoffman Plastic used that phrase.

13

In particular, Sunrise points to its obligations to the Parma facility's residents under Ohio's "residents' rights" statute, section 3721.13 of the Ohio Revised Code. That statute secures a nursing home resident's rights, among others, "to a safe and clean living environment," Ohio Rev. Code Ann. § 3721.13(A)(1), and "to have all reasonable requests and inquiries responded to promptly," id. § 3721.13(A)(4). Supporting this argument was Sunrise's expert witness, Kurt Haas, who testified that state regulators hold facilities such as the one at Parma to the statutory standard for nursing homes. Haas further testified that regulators would expect a facility whose workers threatened a strike to take "corrective action, preventative measures that were commensurate with the infraction" against the strike, to prevent "abuse and neglect" of the facility's residents. J.A. 532. Haas also surmised that a facility that tolerated an employee strike would be "in harm['s] way" regarding its state certification, without which it could not continue to operate. J.A. 550. On cross-examination, however, Haas could not point to any state law or regulation that would compel a facility to fire employees who planned a one-day work stoppage. He also knew of no case in which a facility actually lost its state license because workers "talked about" such a strike.

We do not dispute Sunrise's claim that as an operator of a state-licensed assisted living facility the company has

14

significant duties to its residents under Ohio's health care statute. Sunrise simply failed, however, to prove that its duties under the Ohio statute directly collided with its section 8(a)(1) obligation to refrain from unfair labor practices. The Act protected Reyes in preparing the petition and planning the work stoppage, and as Haas's answers on cross-examination revealed, no Ohio law compelled Sunrise to fire Reyes for these actions. Haas's mere speculation that the Parma facility could have lost its state license if it did not fire Reyes and take other measures to respond to the threatened strike is inadequate to support Sunrise's claim. The Board's determination to this effect was correct.

Hoffman Plastic moreover does not extend as far as Sunrise would take it. The Supreme Court held in that case that the Board's remedial order could not be permitted to undermine the express terms of a federal immigration statute. Here, there is simply no federal statute upon which the Board's decision "trenched," and nothing in Hoffman Plastic subordinated the Board's determinations under the Act to the sort of vague generalizations about the principles of state law that Sunrise presents.

Sunrise's arguments thus fall short of establishing that the Board erred. Striking "the proper balance between the asserted business justifications and the invasion of employee rights in light of the Act and its policy" is a task that is "the primary responsibility of the Board and not the courts." Medeco Sec.

15

Locks, 142 F.3d at 745 (punctuation omitted). Accordingly, we cannot set aside the Board's conclusion that Sunrise lacked a "substantial and legitimate business reason" for firing Reyes that trumped her rights under the Act and that her discharge contravened section 8(a)(1).

B.

The ALJ stated that he "found Reyes a less than fully credible witness based on her demeanor and testimony," which was "contradicted by multiple witnesses, including Smith who, like Reyes, testified on behalf of the General Counsel." J.A. 937 n.6. If Reyes had testified honestly about the discussions, the proceeding would have been somewhat shorter because Sunrise would not have called as many care aides to rebut Reyes's testimony. The Board recognized that the ALJ "discredited portions of [Reyes's] testimony," but stated that "there is no evidence that [Reyes] engaged in deliberate and malicious misconduct that abused and undermined the integrity of the Board's processes." J.A. 933. The Board ordered Reyes reinstated with full back pay. Reyes benefitted from this remedy even though -- having taken an oath to testify truthfully before the ALJ -- she violated that oath when she denied discussing a strike with care aides.

Sunrise acknowledges that under ABF Freight System, Inc. v. NLRB, 510 U.S. 317 (1994), the Board has "broad discretion" in

16

selecting remedies, even those that benefit employees whose inexcusable false testimony risks compromising the integrity of administrative proceedings. Id. at 325. Sunrise nevertheless attacks the Board's remedy here based on a recent case, Toll Manufacturing Co., 341 N.L.R.B. No. 115 (May 4, 2004). There, the Board cut off an employee's backpay as of the date he first lied under oath before an ALJ. The Board ruled that the employee had "abused the Board's processes for his own benefit, that his transgressions were repeated, and that his testimony was generally untrustworthy." Id., slip. op. at 5. Sunrise contends, however, that Toll Manufacturing and the Board's remedial order are so inconsistent that the Board has exceeded its "broad [remedial] discretion."

Sunrise expresses legitimate concern about Reyes's discredited testimony. Untruthful testimony in any form, whether at an unfair labor practice hearing or a trial in any court, is of grave concern. We neither "reward nor condone . . . a flagrant affront to the truth-seeking function of adversary proceedings." ABF Freight, 510 U.S. at 323 (punctuation omitted). Yet when the Board has concluded that the objectives of the National Labor Relations Act are best served by awarding relief to an employee who did not testify truthfully in all respects, the Supreme Court has cautioned generalist judges not to casually second guess that expert determination. "[C]ourts must give the agency's decision

17

controlling weight unless it is 'arbitrary, capricious, or manifestly contrary to the statute.'" Id. at 324 (quoting Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984)). The source of this rule is Congress's express delegation to the Board, not the courts, of the power to ascertain remedies for unfair labor practices. 29 U.S.C. § 160(c); ABF, 510 U.S. at 324. Put another way, to set aside the Board's remedial order we would have to conclude that "the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." Virginia Elec. & Power Co. v. NLRB, 319 U.S. 533, 540 (1943); ABF, 510 U.S. at 324 n.10 (quoting id.).

Sunrise fails to show that the Board's remedy was arbitrary and capricious. The Board's remedial order was not an unexplained deviation from the Board's determination in Toll Manufacturing. Rather, the Board reasonably distinguished that case. Toll Manufacturing involved an employee who after his discharge claimed he should not have been fired for failing to notify his employer on two days that he would not be at work. The employee testified at an initial unfair labor practice hearing that he gave proper notice by calling his employer from home on those days, and the ALJ specifically credited that testimony. In fact, the employee went to work for another employer on those days, but he repeated his lies in an affidavit, in a subsequent deposition,

18

and finally at a second hearing that the Board ordered to examine the discrepancies in the record created by the employee's previous lies. Toll Mfg. Co., slip. op. at 1, 5. Here, by contrast, the ALJ determined at the hearing that Reyes's testimony about discussing the work stoppage was not credible; the discredited testimony (unlike the credited testimony in Toll Manufacturing) did not go on to contaminate the ALJ's decision or subsequent Board proceedings. Thus the Board's conclusion that Reyes's discredited testimony did not amount to a malicious abuse of the Board's processes was not arbitrary and capricious.

Reyes's discredited testimony is troubling and must be condemned. ABF counsels us, however, to conclude that the Board's chosen remedy fell within its "broad discretion." The remedy must therefore be enforced.


III.

Sunrise next claims that its demotion of Smith was not an unfair labor practice. The company contends that it would have disciplined Smith even if she had not engaged in activity protected under section 7 and that the Board's contrary determination was erroneous. The Board applied the burden-shifting framework of Wright Line, 251 N.L.R.B. 1083 (1980), enforced, 662 F.2d 899 (1st Cir. 1981), to determine whether Sunrise's action constituted discrimination against Smith based on her protected activity.

19

Under this familiar framework, the General Counsel must first present a prima facie case that the employer's disciplinary decision was motivated by the protected activity. "To make out a prima facie case, the General Counsel must show (1) that the employee was engaged in protected activity, (2) that the employer was aware of the activity, and (3) that the activity was a substantial or motivating reason for the employer's action." FPC Holdings, Inc. v. NLRB, 64 F.3d 935, 942 (4th Cir. 1995). If the General Counsel makes such a showing, "the employer may still escape liability by presenting the affirmative defense that the discriminatory motivation, though illicit, was harmless." Medeco Sec. Locks, 142 F.3d at 742. To demonstrate harmlessness, the employer must establish that it would have taken the same action against the employee for legitimate reasons. Id. "If the Board believes the employer's stated lawful reasons are non-existent or pretextual, the employer's defense fails." Air Contact, 403 F.3d at 215 (punctuation omitted). The Board's determination regarding an employer's motive is a factual one, NLRB v. Hale Container Line, Inc., 943 F.2d 394, 398 (4th Cir. 1991), so we must uphold such a determination if it is supported by substantial evidence, 29 U.S.C. § 160(e), which is tantamount to asking "whether on this record it would have been possible for a reasonable jury to reach the Board's conclusion." Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 366-67 (1998).

Sunrise concedes that the General Counsel proved by a preponderance that a discriminatory motive was a substantial or motivating factor for Smith's demotion and thus established a prima facie case. Sunrise proceeds to challenge the Board's rejection of its defense. The company asserts two lawful reasons for demoting Smith. First, it alleges that Smith improperly harassed Dousa when, after learning from other aides that Dousa had revealed to management that Smith and Reyes had drafted the petition, Smith called her to complain. Second, the company alleges that Smith had a prior history of breaking work rules that warranted discipline. Several times she left the facility while "on the clock," and she was once accused of not helping all the residents shower. J.A. 781-83, 839-43. The ALJ concluded that the company's asserted reasons were pretextual, and the Board adopted all of the ALJ's findings with one narrow exception: the Board did not endorse the ALJ's conclusion that Smith's telephone call to Dousa could be considered as part and parcel of Smith's protected activity.

The Board's conclusion was the same that a reasonable jury could have reached from the evidence presented. First, although Dousa testified that Smith used harsh language in the telephone call and that Dousa was intimidated as a result, there was no evidence that Dousa suffered anything more than hurt feelings. For example, Smith never used profanities or made any threats during the telephone call. Also, if the harassment had

21

been a valid reason for the company's action, Sunrise would have reasonably been expected to follow its own standard procedures before disciplining Smith. Instead the company disciplined Smith without obtaining her "version of events," Rep. Br. at 10, which was inconsistent with Sunrise's established internal investigations policy. According to that policy, the final step in an investigation is to record the target's account of the events at issue.

Second, Sunrise, which bore the burden of proof on its defense, did not present substantial evidence that it demoted Smith for her prior violations of Sunrise rules. The company never told her that previous misconduct drove the demotion. In addition, more than a year elapsed between the last prior transgression and Smith's demotion, reducing the likelihood that the previous misconduct had any causal relationship to the action.

Thus, we affirm the Board's conclusion that Sunrise's demotion of Smith was an unfair labor practice contravening section 8(a)(1).

IV.

Sunrise's final claim is that its group and individual interviews of the aides did not amount to an unfair labor practice because the company did not coercively interrogate the employees. Ordinary questioning of employees about protected concerted

22

activity is not an unfair labor practice, but coercive questioning is, and like the Board we consider the totality of the circumstances to tell the difference. NLRB v. Nueva Eng'g, Inc., 761 F.2d 961, 965-66, 966 n.5 (4th Cir. 1985). The relevant circumstances may include "the nature of information sought, the identity of the questioner, and the place and method of the questioning." Id. at 966. The Board assesses the circumstances in the first instance, and we affirm the Board's finding on coerciveness if it is supported by substantial evidence. When the finding rests on credibility determinations, we accept those determinations where there is no showing of "exceptional circumstances" (namely that the determinations contradict other findings, or are unreasonable, or are supported by little to no reasoning). NLRB v. CWI of Maryland, Inc., 127 F.3d 319, 326 (4th Cir. 1997).

Sunrise strives to distinguish the March 10 group interviews from the March 11 individual interviews. The company contends that the ALJ should have credited the testimony of managers Johnson and Olsavsky that they began the group interviews with introductory remarks assuring the aides there would be no reprisals against them for participating in the petition. The ALJ's decision contains no specific credibility determination regarding Olsavsky, and Sunrise emphasizes that Amber Hines, the one care aide who testified to the specifics of the group meeting

23

she attended, could not remember how the meeting began. The company acknowledges Hines's testimony that the interviewers at no time promised there would be "no retaliation . . . taken against anyone for sitting in the room" and answering questions. J.A. 330. Nevertheless, Sunrise maintains that the ALJ erred in concluding that Johnson and the others never assured the aides against reprisal. Specifically, Sunrise argues that Hines was biased by other conflicts with Sunrise personnel, her recollection was not complete, and Olsavsky provided evidence to the contrary.

Sunrise's claim faces several insurmountable obstacles. First, Hines's partial recollection was enough to permit the ALJ to infer that the interviewers did not assure the aides that there would be no reprisal. Sunrise has not shown any of the "exceptional circumstances" that would warrant our overturning the ALJ's decision to credit Hines instead of Johnson, and while a ruling on Olsavsky's credibility might have made the ALJ's reasoning complete, the absence of such a ruling is not grounds for reversal. Second, Sunrise places more weight on assurances against reprisal than they can bear. Such assurances, even if given, do not by themselves remove the sting of unfairness from otherwise coercive interrogation. Standard-Coosa-Thatcher Carpet Yarn Div., Inc. v. NLRB, 691 F.2d 1133, 1141 n.8 (4th Cir. 1982) (quoting Johnnie's Poultry Co., 146 N.L.R.B. 770, 775 (1964)). Third, even if Johnson and her colleagues believed they were not coercing the

24

aides during the group interviews, the Board would not be precluded from finding that the interviews contravened section 8(a)(1). "[N]o proof of coercive intent or effect is necessary[,] the test being whether the employer engaged in conduct, which, it may reasonably be said, tends to interfere with the free exercise of employee rights under the Act." Brandeis Mach. & Supply Co. v. NLRB, 412 F.3d 822, 830 (7th Cir. 2005) (punctuation omitted). Also, we note that the General Counsel's complaint focused on the March 11 individual interviews, and nothing in the Board's remedial order differentiated between the group interviews and the individual ones.

From the totality of the circumstances surrounding Sunrise's interviews of the aides on March 10 and 11, we conclude that substantial evidence supports the Board's finding of an unfair labor practice. In the interviews Johnson and the other executives sought information concerning the petition and the planned work stoppage, two protected activities under the Act. Johnson made her disapproval of the activities clear in the interviews. The identity of the questioners also weighed in favor of the coercion finding. Johnson was the Parma facility's new executive director, Olsavsky was Sunrise's regional registered nurse, and Antosh was the executive director of the company's facility in Rocky River, Ohio. All three had oversight responsibility, while the interview subjects were all low-level care aides. Finally, the method of

25

questioning was insistent. Johnson asked about the identity of the petition's authors not just once, but several times. The questioning also exacerbated rather than alleviated the aides' fear of being fired for signing the petition.

There was, in sum, substantial evidence before the ALJ and the Board that both the group and individual interviews were coercive. We therefore leave undisturbed the Board's conclusion that Sunrise violated section 8(a)(1) by coercively interrogating its employees.

V.

The Board's determinations that Sunrise committed unfair labor practices by coercively interrogating the aides, firing Reyes, and demoting Smith are supported by substantial evidence. In addition, the Board's choice of remedy was not arbitrary and capricious. Accordingly, we deny Sunrise's petition for review and grant the Board's cross-petition for enforcement of its decision and order.

PETITION FOR REVIEW DENIED;
CROSS-PETITION FOR ENFORCEMENT GRANTED