16-2325-ag(L)
NLRB v. Long Island Ass'n for AIDS Care, Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
_____

August Term, 2017

(Argued: August 21, 2017                    Decided: August 31, 2017)

Docket Nos. 16-2325-ag(L), 16-2782-ag(XAP)


_____


NATIONAL LABOR RELATIONS BOARD,

*Petitioner-Cross-Respondent*,

v.

LONG ISLAND ASSOCIATION FOR AIDS CARE, INC.,

*Respondent-Cross-Petitioner*.


_____

Before: NEWMAN, LEVAL, and POOLER, *Circuit Judges*.

Before the Court is the July 1, 2016 application of Petitioner-Cross-

Respondent National Labor Relations Board ("NLRB") to enforce, and the

August 10, 2016 cross-petition of Respondent-Cross-Petitioner Long Island

Association for AIDS Care, Inc. ("LIAAC") to review, the NLRB's June 14, 2016

Decision and Order determining that LIAAC violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), by promulgating an unlawful confidentiality agreement and by terminating an employee for his refusal to sign the unlawful confidentiality agreement. Because an employer violates Section 8(a)(1) when it terminates an employee for refusing to sign an unlawful employment document, we enforce the order of the NLRB and deny the cross-petition for review.

The remaining issues on appeal are disposed of in a summary order filed this day.

Affirmed.

_____

DAVID R. EHRLICH, Stagg, Terenzi, Confusione & Wabnik, LLP (Debra L. Wabnik, *on the brief*), Garden City, NY. *for Respondent-Cross-Petitioner Long Island Association for AIDS Care, Inc*.

RUTH E. BURDICK, Deputy Assistant General Counsel, National Labor Relations Board (Julie Broido, Supervisory Attorney, Kyle A. deCant, Attorney, Richard F. Griffin, Jr., General Counsel, Jennifer Abruzzo, Deputy General Counsel, John H. Ferguson, Associate General Counsel, Linda Dreeben, Deputy Associate General Counsel, *on the brief*), Washington,

D.C., *for Petitioner-Cross-Respondent National Labor Relations Board.*

PER CURIAM:

Before the Court is the July 1, 2016 application of Petitioner-Cross-Respondent National Labor Relations Board ("NLRB") to enforce, and the August 10, 2016 cross-petition of Respondent-Cross-Petitioner Long Island Association for AIDS Care, Inc. ("LIAAC") to review, the NLRB's June 14, 2016 Decision and Order determining that LIAAC violated Section 8(a)(1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1), by promulgating an unlawful confidentiality agreement and by terminating an employee for his refusal to sign the unlawful confidentiality agreement. Because an employer violates Section 8(a)(1) when it terminates an employee for refusing to sign an unlawful employment document, we enforce the order of the NLRB and deny the cross-petition for review.

The remaining issues on appeal are disposed of in a summary order filed this day.

# BACKGROUND

## I. Factual Background

LIAAC is a not-for-profit, non-union organization that provides services for HIV/AIDS prevention and treatment at its facility in Hauppauge, New York.

LIAAC hired Marcus Acosta in February 2014 to work as part of a mobile outreach team conducting surveys about substance abuse and mental health. A few months after he was hired, Acosta became a prevention specialist on the mobile outreach team focusing on populations with a high risk of contracting HIV/AIDS.

When Acosta was hired, LIAAC had him read and sign a Confidentiality Statement, as it did with all of its employees. The Confidentiality Statement comprised primarily four operative paragraphs and a remedy paragraph. The first two paragraphs required employees of LIAAC to maintain the confidentiality of information protected by the Health Insurance Portability and Accountability Act ("HIPAA") and by a New York law regarding HIV testing. The third paragraph "strictly prohibited" employees from disclosing information with respect to all "non-public information intended for internal purposes" of LIAAC, including "administrative information such as salaries [and the] contents

4

of employment contracts." App'x at 125. The fourth paragraph prohibited employees from being "interviewed by any media source, or answer[ing] any questions from any media source regarding their employment at LIAAC" or "the workings and conditions of LIAAC" without permission from LIAAC. App'x at 125. The final paragraph instructed employees that "any breach of confidentiality will result in disciplinary action up to and including suspension or termination of employment and criminal prosecution." App'x at 125.

During 2014, Acosta struggled with time management and documentation of his activities. As a response to his difficulties, Acosta was provided with a time log in order to help him manage his time better. Acosta did not appreciate having to fill in the time log and testified that he entered the ingredients of his lunch into his time log at one point "80 percent to help [him]self" with an eating disorder and "20 percent" to be "snippy with [his] supervisor." App'x at 46-47.

In November 2014, Acosta read a Newsday article which reported that Gail Barouh, the CEO of LIAAC, had misappropriated public funds. Specifically, the article reported that an investigation had concluded that Barouh had misappropriated cost-of-living adjustment ("COLA") benefits intended for LIAAC employees. The day the article was published, Acosta received a letter

from Barouh at his desk which "explained what happened and said that LIAAC ha[d] resolved all the issues and we're going to be moving forward." App'x at 13. Along with the letter, Acosta also received a fundraising packet from LIAAC.

According to Acosta, the other employees at LIAAC were upset about the article because many people told him that they had worked for years without raises. As a result, Acosta asked his supervisors and the Director of Human Resources, Robert Nicoletti, how wages and raises worked at LIAAC and how COLA funds were used at LIAAC. Nicoletti instructed Acosta to "just focus on [his] work and nothing else." App'x at 21. Acosta testified that he decided to do just that.

In February 2015, Acosta's head supervisor, Michele Keogh, wrote in a Supervision Meeting Summary that Acosta had been insubordinate and negative. Specifically, Keogh recounted that Acosta had been tasked with giving a presentation, which Acosta refused to do and announced at a team meeting that "he did not get paid enough to fulfill this task." App'x at 129. Keogh identified this as insubordination. Keogh also wrote that Acosta was being negative based on his informing her that "other staff members were voicing their dissatisfaction with regards to salary and work environment to him," but then refusing to

"disclose names of the individuals who [we]re reporting to him their negative feelings." App'x at 129. Nonetheless, Keogh also wrote that Acosta "takes pride in his work" notwithstanding his concerns about management, and Acosta wrote on the report that he wants to "focus on the work and developing professionally" in the work that he does as a prevention specialist. App'x at 130-31.

In March 2015, LIAAC asked all employees to sign its Confidentiality Statement again. Acosta signed, but indicated that he did so under duress and identified certain portions of the Confidentiality Statement with which he disagreed, specifically the third paragraph's prohibition on discussing wages and the fourth paragraph's prohibition on talking to the media.

On March 20, 2015, Acosta met with his direct supervisor, Sophia Noel, and requested a raise. Acosta explained that he had spoken to other employees who had told him they received raises, and so he felt he could ask for a raise based on his year of working at LIAAC. Noel laughed when he asked for a raise, but she told him that he had made great improvements in time management and that she would let Keogh know about his request.

On March 24, 2015, Acosta met with Noel again. She told him that he had improved and was doing well, and the two of them made plans for future events in which Acosta would participate for LIAAC.

Acosta's meeting with Noel was cut a few seconds short by a co-worker who told Acosta to go see Nicoletti for a meeting. Ray Ward, the Chief Program Officer for LIAAC, and another Human Resources employee were also present at the meeting. Nicoletti opened the meeting by telling Acosta that "this is a yes or no conversation, there's no room for discussion." App'x at 31-32. Nicoletti then gave Acosta the Confidentiality Statement to sign a second time, and told Acosta to sign it or get fired. Acosta signed the statement, but indicated that he did so "under duress" three times at the bottom of the sheet. App'x at 124. Upon receiving the Confidentiality Statement with Acosta's notations, Nicoletti informed Acosta that "you just terminated yourself." App'x at 32. Acosta asked for a copy of the Confidentiality Statement that he signed, but this was denied. Acosta then called the police thinking it might help him get a copy of his signed Confidentiality Statement, but when Nicoletti yelled at Acosta, Acosta told the police there was no emergency and he hung up the phone. Acosta then left LIAAC's building.

8

## II. Procedural Background

On March 26, 2015, Acosta filed a charge against LIAAC with the NLRB. In his charge, Acosta alleged that LIAAC had "unlawfully prohibited employees from talking about their wages, hours, terms[,] and conditions of employment" and that LIAAC had "discharged [Acosta] because he asserted his Section 7 rights and because he engaged in protected concerted activities." App'x at 123.

On July 27, 2015, the Administrative Law Judge ("ALJ") tried the case in Brooklyn, New York. The ALJ heard testimony from Acosta and from Ward on behalf of LIAAC.

On August 26, 2015, the ALJ issued his decision. The ALJ first held that the Confidentiality Statement was "facially invalid" because "an employer unlawfully intrudes into its employees' Section 7 rights when it prohibits employees, without justification, from discussing among themselves their wages and other terms and conditions of employment." App'x at 175. The ALJ then found that Acosta engaged in concerted activity with respect to wages at LIAAC by discussing wages and COLA increases with other employees, and by bringing these concerns to Noel, Keogh, and Nicoletti even though Acosta refused to identify those with whom he had been speaking. The ALJ also found that, even if

9

Acosta were not engaged in concerted activity, his comments were protected because the Confidentiality Statement was facially invalid. The ALJ further held that LIAAC had not met its burden in proving that Acosta would have been discharged due to his poor work performance, and thus concluded that LIAAC's discharge of Acosta violated Section 8(a)(1) of the NLRA. The ALJ therefore required LIAAC to reinstate and compensate Acosta, to remove paragraphs three and four from the Confidentiality Statement, and to post an attached Notice to Employees in its facility.

Thereafter, both parties filed exceptions to the ALJ's decision. On June 14, 2016, after considering the parties' exceptions, the NLRB issued a decision affirming the ALJ's rulings, findings, and conclusions as modified. The NLRB agreed with the ALJ that LIAAC violated Section 8(a)(1) of the NLRA by "promulgating and maintaining a confidentiality statement that employees would reasonably construe to prohibit them from discussing wages or other terms and conditions of employment with employees or nonemployees and the media." App'x at 199. The NLRB also agreed with the ALJ that LIAAC violated Section 8(a)(1) by threatening to discharge and then discharging Acosta for refusing to agree to the unlawful confidentiality statement. The NLRB did not

base its decision on a finding that Acosta engaged in concerted activity. The NLRB also adopted remedial provisions similar to those adopted by the ALJ and required LIAAC to post a Notice to Employees on its premises regarding LIAAC's employees' rights under the NLRA.

The NLRB's application to enforce and LIAAC's cross-petition to review the NLRB's decision were timely filed on July 1, 2016 and August 10, 2016, respectively.

**DISCUSSION**

**I. Standard of Review**

"We uphold the NLRB's findings of fact if supported by substantial evidence and the NLRB's legal determinations if not arbitrary and capricious." *Cibao Meat Prods., Inc. v. NLRB*, 547 F.3d 336, 339 (2d Cir. 2008). "[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *NLRB v. G&T Terminal Packaging Co., Inc.*, 246 F.3d 103, 114 (2d Cir. 2001). "The substantial evidence standard requires us to review the record in its entirety, including the body of evidence opposed to the [NLRB's] view." *Id.* (internal quotation marks and ellipses omitted). "We may not[, however,] displace the

11

[NLRB's] choice between two fairly conflicting views, even though we would justifiably have made a different choice had the matter been before us de novo." *Id.* (internal quotation marks and brackets omitted). "Instead, a reversal based upon a factual question will only be warranted if, after looking at the record as a whole, we are left with the impression that no rational trier of fact could reach the conclusion drawn by the" NLRB. *Id.* (internal quotation marks omitted).

"Our review [of the NLRB's legal conclusions] is [also] deferential: This [C]ourt reviews the [NLRB's] legal conclusions to ensure they have a reasonable basis in law. In so doing, we afford the [NLRB] a degree of legal leeway." *Cibao Meat Prods.*, 547 F.3d at 339.

## II. Acosta's Termination in Violation of Section 8(a)(1)

LIAAC appeals the NLRB's decision with respect to Acosta's termination primarily because Acosta did not engage in "concerted activity" under Section 7 of the NLRA, 29 U.S.C. § 157, and therefore his termination was not in violation of Section 8(a)(1), and, secondarily, because Acosta was terminated because of his poor work performance and not his refusal to sign the Confidentiality Statement. The NLRB, however, affirmed the ALJ's decision because it determined that Acosta had been terminated based on his refusal to sign the

Confidentiality Statement and because it held that terminating Acosta for his refusal to sign an unlawful confidentiality agreement violated Section 8(a)(1) independent of any need for concerted activity. Thus, we must first determine whether substantial evidence supports the factual finding that Acosta was terminated for his refusal to sign, and then we must determine whether a concerted activity is legally necessary to find a violation of Section 8(a)(1).

We hold that substantial evidence supports the NLRB's finding that Acosta was terminated because of his refusal to sign the Confidentiality Statement. Acosta's testimony that Nicoletti told him to "sign [the Confidentiality Statement] or get fired" during the meeting on March 24, 2015 is uncontroverted. App'x at 32. In addition, both Acosta and LIAAC's own witness testified that Nicoletti told Acosta that he "just terminated his own employment" based on his writing "under duress" on the Confidentiality Statement when he signed it on March 24, 2015. App'x at 32, 88. No evidence has been presented that refutes this statement of events.

Further, LIAAC's counter-story that Acosta was fired for his poor performance is not supported by the evidence. Although there is evidence in the record that Acosta had difficulty with time management in 2014, that he was

13

considered for termination in November 2014, and that there was an issue with Acosta refusing to do a presentation at work in early 2015, the more recent evidence in the record indicates that Acosta was improving. LIAAC presented no evidence contradicting Acosta's testimony that Noel told him four days before he was fired that he had made "a big improvement since November." App'x at 30. LIAAC also did not respond to Acosta's testimony that, on the day of his firing, he met with Noel in order to discuss future events that Acosta would be participating in at LIAAC, thus suggesting that Noel did not believe Acosta would be fired later that day based on his performance. Indeed, Acosta testified that at that meeting, which was immediately before he was terminated, Noel again told him that he had improved.

Accordingly, we hold that substantial evidence supports the NLRB's finding that Acosta was terminated because of his refusal to sign the Confidentiality Statement. Thus, we must next determine whether the NLRB was correct as a legal matter that LIAAC violated Section 8(a)(1) when it terminated Acosta for his refusal to sign an unlawful confidentiality agreement without requiring proof of concerted activity.

14

"The [NLRB] has long adhered to and applied the principle that discipline imposed pursuant to an unlawfully overbroad rule is unlawful." *The Cont'l Grp., Inc.*, 357 N.L.R.B. 409, 410 (2011). This is called the *Double Eagle* rule after *Double Eagle Hotel & Casino*, 341 N.L.R.B. 112 (2004). *See The Cont'l Grp., Inc.*, 357 N.L.R.B. at 410. One of the central concerns animating the *Double Eagle* rule is that "the mere maintenance of an overbroad rule tends to inhibit employees who are considering engaging in legally protected activities by convincing them to refrain from doing so rather than risk discipline." *Id.* at 411. Thus, "[a]n employer is not free to evade liability through the device of utilizing a rule prohibiting activity protected by Section 7 of the [NLRA] and by then basing its discipline on the fact that the employee has violated the rule, thereby being insubordinate." *Kolkka Tables & Finnish-Am. Saunas*, 335 N.L.R.B. 844, 849 (2001). In other words, "an employer may not discharge an employee for refusing to comply with an unlawful order prohibiting protected activity." *Quantum Elec., Inc.*, 341 N.L.R.B. 1270, 1280-81 (2004). The rule that has emerged, therefore, is "that an employer may not take coercive action against an employee . . . for refusing to comply with a policy that . . . itself deters protected activity" in violation of Section 8(a)(1). *NLRB v. Air Contact Transp. Inc.*, 403 F.3d 206, 214 (4th Cir. 2005). This rule holds

15

true for employee refusals to sign unlawful documents as a condition of employment, including, for example, unlawful arbitration agreements. *See Everglades College, Inc.*, 363 N.L.R.B. No. 73, at *1, *3 (2015).

We hold that the NLRB was correct in deciding that an employer violates Section 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1), when an employer terminates an employee for refusing to agree to an unlawful confidentiality agreement. An employer may not require even one individual employee to agree to abide by unlawful restrictions as a condition of employment. That the employees have not yet organized in order to protest the unlawful nature of the restriction at issue does not make it any less unlawful. The contrary rule urged by LIAAC, that an employee can be required to comply with an unlawful policy and the employee is only protected from the unlawful policy if he or she actively organizes with other employees against it, is illogical and untenable. An unchallenged unlawful document can cause the chilling effect that Section 8(a)(1) seeks to prevent just as much as one that has been challenged by concerted action. *See NLRB v. Vanguard Tours, Inc.*, 981 F.2d 62, 67 (2d Cir. 1992). We see no reason to judge the effect of an unlawful requirement on an employee's termination based solely on whether the employee acted in concert or alone. Instead, we judge the effect of the

16

requirement on an employee's termination based on the lawfulness or unlawfulness of the requirement.

Here, the Confidentiality Statement was unlawful and Acosta was terminated by LIAAC for refusing to sign the unlawful Confidentiality Statement. This was a violation of Section 8(a)(1). Accordingly, finding neither legal nor factual error, we affirm the decision of the NLRB that Acosta was terminated by LIAAC in violation of Section 8(a)(1) for refusing to sign the unlawful Confidentiality Statement.

## CONCLUSION

For the reasons set forth above and in the accompanying summary order, we affirm the judgment of the NLRB.

17