16-3076(L)
Novelis Corporation v. NLRB

# In the
# United States Court of Appeals
## For the Second Circuit

August Term 2017
(Argued: August 28, 2017; Decided: March 15, 2018)

Nos. 16-3076 (Lead), 16-3570 (XAP)

NOVELIS CORPORATION,

*Petitioner-Cross-Respondent*,

*and*

JOHN TESORIERO, MICHAEL MALONE, RICHARD FARRANDS, and
ANDREW DUSCHEN,

*Intervenors*,

v.

NATIONAL LABOR RELATIONS BOARD,

*Respondent-Cross-Petitioner*,

*and*

UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING,
ENERGY, ALLIED INDUSTRIAL & SERVICE WORKERS INTERNATIONAL
UNION, AFL-CIO, CLC,

*Intervenor.*

Cross-petitions for review or enforcement of an order from the NLRB.
364 NLRB No. 101 (N.L.R.B.) Chairman Pearce and Members Hirozawa and McFerran.

1

Before:    PARKER, LYNCH, and CARNEY, *Circuit Judges.*

————

Petitioner-Cross-Respondent Novelis Corporation petitions for review and Respondent-Cross-Petitioner National Labor Relations Board petitions for enforcement of an NLRB decision and order (364 NLRB No. 101). The NLRB found that Novelis engaged in unfair labor practices in violation of the National Labor Relations Act in an attempt to dissuade employees from voting for the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO, CLC, as their bargaining representative. The NLRB ordered Novelis to cease and desist from the unfair practices and to bargain with the union. We agree with the Board's determination that Novelis violated Sections 8(a)(1) and 8(a)(3) of the Act, and we grant enforcement as to most components of the Board's order of remedial relief. Because we conclude that the NLRB did not properly account for changed circumstances at Novelis between the time of the unfair labor practices and its decision and order, we deny enforcement of the bargaining order.

————

KURTIS A. POWELL & ROBERT T. DUMBACHER, Hunton & Williams, LLP, Atlanta, GA; KENNETH L. DOBKIN, Novelis Corporation, Atlanta, GA, *for Petitioner-Cross-Respondent*.

THOMAS G. ERON, Bond, Schoeneck & King, PLLC, Syracuse, NY, *for the Intervenors, John Tesoriero, et al.*

USHA DHEENAN & KELLY ISBELL *for* RICHARD F. GRIFFIN, JR, JENNIFER ABRUZZO, JOHN H. FERGUSON & LINDA DREEBEN, National Labor Relations Board, Washington, D.C., *for Respondent-Cross-Petitioner*.

RICHARD J. BREAN, DANIEL M. KOVALIK & ANTHONY P. RESNICK, United Steelworkers Legal Department, Pittsburgh, PA; BRIAN J. LACLAIR & KENNETH L. WAGNER, Blitman & King, LLP, Syracuse, NY *for the Intervenor, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC.*

BARRINGTON D. PARKER, *Circuit Judge*:

Novelis Corporation petitions for review, and the National Labor Relations Board petitions for enforcement, of an NLRB decision and order requiring, among other things, Novelis Corporation to bargain with the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO, CLC (the "Union"). The Board also ordered Novelis to take other remedial steps, such as to cease and desist from engaging in various unfair labor practices and to reinstate a demoted employee. We agree with the Board's conclusion that Novelis engaged in unfair labor practices, and we grant enforcement as to most components of the Board's order of remedial relief, except as noted below. Because we conclude that the Board did not fully take into account events occurring between the time of the unfair labor practices and its decision and order, we deny enforcement of the bargaining order.

## I. BACKGROUND

Novelis operates a facility in Oswego, New York, at which it manufactures rolled aluminum products. In 2013, the plant employed

approximately 800 persons, of whom approximately 600 were eligible to vote in unionization elections. In December 2013, management announced that, beginning on January 1, 2014, employees would no longer receive Sunday premium pay and that holiday and vacation days would no longer count towards overtime eligibility.

In response to the announcement, Everett Abare, a Novelis employee, met with James Ridgeway, the Union's local president, to initiate an organizing campaign. Between mid-December 2013 and early January 2014, Abare and approximately 25 other Novelis employees conducted organizing activities and ultimately obtained signed union authorization cards from a majority of the eligible employees. On January 7, 2014, the Union requested voluntary recognition from Novelis. Two days later, management announced that it was restoring Sunday and holiday pay and distributed literature confirming that it no longer contemplated changes to employee compensation. Following this restoration of benefits, some employees who had signed authorization cards requested their return.

On January 13, 2014, Novelis declined the Union's demand for recognition, and, in response, the Union petitioned the NLRB for a representation election. Novelis aggressively resisted the organizing efforts and, in the course of these activities, the Union contends, committed multiple unfair labor practices. On February 17 and 18, 2014, Novelis managers held three employee meetings at which President and CEO Phil Martens, Plant Manager Chris Smith, and Senior Vice-President Marco Palmieri addressed employees. Martens reminded employees that Novelis' unionized plant in Quebec had closed while the non-unionized Oswego plant continued to expand, and Smith similarly suggested that unionization would lead to a loss of business. The election was held on February 20 and 21, 2014, and Novelis prevailed by a vote of 287 to 273.

Following the election, Abare posted a vulgar remark[1] to his online Facebook account complaining about his salary and castigating his fellow workers who had voted against unionization. In response, Novelis demoted him.

---

[1] That post read as follows: "As I look at my pay stub for the 36 hour check we get twice a month, One worse than the other. I would just like to thank all the F*#KTARDS out there that voted 'NO' and that they wanted to give them another chance…! The chance they gave them was to screw us more and not get back the things we lost….! Eat $hit 'NO' voters….." Appendix ("A.") 727.

Between January and May 2014, the Union filed multiple charges with the Board. On May 6, 2014, the NLRB's General Counsel issued a consolidated complaint alleging that, in violation of the National Labor Relations Act ("NLRA"), Novelis restored Sunday and holiday pay, interrogated and threatened employees who favored unionization, and prohibited employees from expressing support for the Union. Subsequently, the Union filed a charge alleging that Novelis demoted Abare in retaliation for his pro-Union activities, prompting the Board to file another complaint. In both complaints, the Board argued that a bargaining order was a necessary remedy.

ALJ Michael A. Rosas heard the charges over the course of 17 days between July and October 2014. After hearing testimony from numerous employees (including Abare, but not the three high-level managers who spoke at the January meetings), the ALJ largely accepted the allegations in the complaints and concluded that Novelis had committed numerous unfair labor practices. He found that Novelis violated Section 8(a)(1)[2] by restoring Sunday and holiday pay, removing Union literature, prohibiting employees from wearing Union

---

[2] Section 8(a)(1) of the Act provides that it shall be an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]." 29 U.S.C. § 158(a)(1).

6

paraphernalia, and coercively interrogating employees about their Union sympathies. He also found that Novelis threatened employees with wage loss, plant closure, reduction in wages, and more onerous working conditions were they to unionize. Finally, he found that Novelis violated Sections 8(a)(1) and (3)[3] by demoting Abare. As relief, the ALJ recommended that the Board order Novelis to cease and desist from its unfair labor practices and to offer to reinstate Abare with back pay. The ALJ also stated his view that "traditional remedies . . . would be insufficient to alleviate the impact reasonably incurred by eligible unit employees," and on that basis recommended the "extraordinary relief" of a bargaining order. A. 1740.

Contemporaneously with the ALJ hearing, the Union sought substantial temporary injunctive relief in the U.S. District Court for the Northern District of New York, pursuant to Section 10(j) of the Act.[4] *Ley v. Novelis Corp.*, No. 5:14-CV-

---

[3]Section 8(a)(3) of the Act provides that it shall be an unfair labor practice for an employer to "discriminat[e] in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3).

[4] Section 10(j) provides: "The Board shall have power, upon issuance of a complaint as provided in subsection (b) [of this section] charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper." 29 U.S.C. § 160(j).

77, 2014 WL 4384980 (N.D.N.Y. Sept. 4, 2014). Section 10(j) relief may be available if a court concludes that reasonable cause exists to believe that unfair labor practices have been committed and that the requested relief is "just and proper." *See Mattina v. Kingsbridge Heights Rehab. & Care Ctr.*, 329 F. App'x 319, 321 (2d Cir. 2009). The District Court found reasonable cause to believe that Novelis had committed unfair labor practices and that equitable considerations required Novelis to reinstate Abare to his previous position. The Court also ordered Novelis to post and read its decision and order to all employees. *Ley*, 2014 WL 4384980, at *7-*8.

The District Court refused, however, to issue an interim bargaining order, explaining that "[w]hile there is reasonable cause to believe that ULPs were committed, the evidence of ULPs is not overwhelming, or, at least, it is subject to a wide range of interpretation. And the employees in the unit themselves—as evinced by the copious declarations and confidential witness affidavits filed herein—are obviously sharply divided over the issue of unionization." *Id.* at *6.

Manager Chris Smith, accompanied by a Board agent, complied with the District Court's order when he read it in a series of employee meetings in

8

September 2014. In addition, Novelis restored Abare to his former position, posted the order throughout the plant, and emailed and mailed it to employees.

Following the ALJ's adverse decision, Novelis filed exceptions with the Board. Novelis moved on three occasions to reopen the record, seeking to introduce evidence of significant employee and management turnover since the occurrence of the alleged unfair labor practices, arguing that changed circumstances made the bargaining order inappropriate. Additionally, four Novelis employees moved to intervene in support of the company, arguing that the bargaining order violated their right under Section 7 to freely choose their bargaining representative.[5]

In August 2016, more than two years after the Union filed its charges, the Board adopted the ALJ's findings and denied Novelis' motions to supplement the record. The Board concluded that Novelis engaged in numerous violations of Section 8(a)(1) of the Act during the pre-election period. Most notably, the Board found that Novelis restored Sunday and holiday pay to discourage employee support for the Union, threatened employees if they were to vote for the Union, selectively and disparately enforced the company's posting and distribution

---

[5]Section 7 provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157.

rules, and maintained unlawful social media and email use rules.[6] It also found that Novelis violated Sections 8(a)(1) and (3) by its post-election demotion of Abare. The Board denied Novelis' motion to reopen the record because "[t]he Board does not consider turnover among bargaining unit employees or management officials and the passage of time in determining whether a *Gissel* [bargaining] order is appropriate." A. 1700 n.17. The Board maintained that "[e]ven if we were to consider [Novelis'] evidence, it would not require a different result" because, regardless of significant employee turnover, the violations were so severe that a substantial number of unit employees would recall the events and inform new employees of what transpired, thus tainting any new election. *Id*. For these reasons, the Board adopted the ALJ's remedial recommendations, including the bargaining order. The bargaining order was premised on *NLRB v. Gissel Packing Co.*, 395 U.S. 575 (1969), which held that sufficiently serious violations of the NLRA can justify an order requiring the employer to bargain with a union that did not win an organizing election.

---

[6]In assessing the lawfulness of Novelis' workplace rules, the Board relied on the framework established in *Lutheran Heritage Village-Livonia*, 343 NLRB 646 (2004). Subsequently, the Board issued *The Boeing Company*, 365 NLRB No. 154, 2017 WL 6403495 (Dec. 14, 2017), which announced a new test. The Board has moved to sever certain of the unfair labor practice charges to enable it to reassess them in light of this change. Because the case is being remanded to the Board in any event, the Board may assess the applicability, if any, of the change in the test to the affected charges.

Following the NLRB proceedings, Novelis petitioned this Court for review and the Board cross-petitioned for enforcement. We have jurisdiction pursuant to 29 U.S.C. §§ 160(e) and (f). For the reasons that follow, we grant in part and deny in part each of the pending cross-petitions.

## II. DISCUSSION

### A. Standard of Review

"On appellate review, the Board's findings of fact will not be overturned if they are supported by substantial evidence on the record considered as a whole, taking into account whatever in the record fairly detracts from its weight, but giving due regard to the Board's expertise." *NLRB v. Thalbo Corp.*, 171 F.3d 102, 112 (2d Cir. 1999). "'Substantial evidence' means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *NLRB v. Quinnipiac Coll.*, 256 F.3d 68, 73 (2d Cir. 2001). Under this standard, "reversal based upon a factual question will only be warranted if, after looking at the record as a whole, we are left with the impression that no rational trier of fact could reach the conclusion drawn by the Board." *NLRB v. Katz's Delicatessen of Houston Street, Inc.*, 80 F.3d 755, 763 (2d Cir. 1996). In reviewing the Board's legal conclusions, we consider whether they have a "reasonable basis in law." *NLRB v. Long Island Ass'n for AIDS Care, Inc.*, 870

F.3d 82, 87 (2d Cir. 2017) (per curiam.). We review the Board's application of law to facts *de novo*, *Beverly Enters., Inc. v. NLRB*, 139 F.3d 135, 140 (2d Cir. 1998), and the Board's evidentiary rulings for abuse of discretion, *NLRB v. Domsey Trading Corp.*, 636 F.3d 33, 37 (2d Cir. 2011).

### B. Findings of Unfair Labor Practices

As previously noted, the Board found that Novelis engaged in numerous violations of Sections 8(a)(1) and (3) both before and after the election. The Board concluded that several of those violations were especially serious, notably, Novelis' reinstatement of Sunday and holiday pay, management's speeches to employees, and Abare's demotion.

Section 8(a)(1) of the Act prohibits employers from interfering with or coercing employees in the exercise of their Section 7 rights. An employer violates Section 8(a)(1) when it confers benefits on employees in an effort to interfere with union organization. We have cautioned that employees are not likely to miss the inference that the source of benefits conferred is also the source of benefits denied. *NLRB v. Whitney Museum of Am. Art*, 636 F.2d 19, 22 (2d Cir. 1980). Novelis' restoration of Sunday and holiday pay is such a benefit. Substantial evidence supports the ALJ's findings that the restoration of benefits was motivated by an intention to interfere with the election.

Novelis' response is that there was insufficient evidence before the ALJ to establish that company management was aware of unionization activity at the time of the restoration of benefits. However, the record shows otherwise. First, the ALJ found that in a December 16 meeting, well before the restoration of benefits, an employee told HR manager Peter Sheftic that workers might seek Union representation, and Sheftic responded: "[W]e certain[ly] hope that we don't have to have a union here at this point, that we will—we're better off doing our own negotiating." A. 1709. In addition, Novelis managers received a specific warning, also before the restoration of benefits, about Union organization when employee Dennis Parker informed supervisor Bryan Gigon that there was talk of organization because employees were concerned about changes to their wages and benefits. Given this evidence, the ALJ concluded that there was "sufficient circumstantial evidence that [Novelis] knew of the incipient union campaign" prior to January 9. A. 1729. The Board adopted that finding.

The record also establishes that, days before the election, Novelis managers held three mandatory employee meetings, during which President and CEO Martens, Plant Manager Smith, and Senior Vice-President Palmieri addressed employees. In one of those meetings, Martens reminded employees

13

that Novelis' unionized plant in Quebec had closed while the non-unionized plant in Oswego was still expanding. In another, Smith suggested that unionization would lead to a loss of business. He told the employees that "[t]he next 12 months are critical. . . . [W]e've got an extremely demanding customer. . . . That same customer will have options as we go forward. The last thing we want to do is give them any reason to look elsewhere outside of Novelis, or specifically Oswego. . . ." A. 1722.

Novelis argues that these statements were harmless, as Smith and Martens later sent letters to employees clarifying any possible misunderstandings regarding their comments." Pet. Br. at 10. According to Novelis, "[b]oth letters were unequivocal" in making clear that Smith did not threaten job or wage loss and Martens did not threaten to close the company's Oswego branch. *Id*. However, under the deferential "substantial evidence" standard of review, we are not compelled to accept these alternative explanations. On the contrary, we conclude that the Board's findings on this issue are appropriately grounded in the record.

Novelis next challenges the Board's findings regarding Abare's demotion, contending that the ALJ erred in prohibiting Novelis from introducing evidence

about Abare's supervisory status. If Abare was a supervisor, then his Facebook post would not be protected, as Section 8(a)(3) does not protect supervisors. *See NLRB v. Neenan Oil Co., L.P.*, 256 F.3d 311, 320 (2d Cir. 1988) ("Supervisors are not protected under the NLRA and do not possess a right to bargain collectively."). The ALJ ruled that Novelis waived the supervisory defense by failing to plead it as an affirmative defense. Novelis contends that it did plead the affirmative defense when it averred that it "did not take any adverse action against any *employee* under the Act," and that this statement is an "obvious reference to the Act's definition of employee" as opposed to "supervisor." Pet. Br. at 42 (emphasis added).

However, affirmative defenses must be specifically pled, and we are not prepared, on this record, to hold that the ALJ abused his discretion in concluding that this affirmative defense was not pled with sufficient specificity. Furthermore, the ALJ concluded that this affirmative defense was proffered late—fifteen days into the hearing—and that receiving it would require recalling "many, if not most" of the witnesses and would cause "undue delay and unfairly prejudice the [NLRB] and [the Union]." A. 1312. This reasoning does not constitute an abuse of discretion.

Next, Novelis challenges the ALJ's finding that Abare's Facebook post was protected under the Act. Specifically, Novelis argues that the Board erred in finding that eleven Novelis employees had "liked" or commented on the post, and, consequently, that it erred in characterizing the post as protected "concerted" activity under Section 7. An employee's speech is "concerted" if "it is engaged in with the object of initiating or inducing group action." *NLRB v. Caval Tool Div.,* 262 F.3d 184, 190 (2d Cir. 2001). We conclude that the Board's finding was grounded in substantial evidence, including Abare's testimony and screenshots of his Facebook post.

We also reject Novelis' argument that, even if that post does qualify as "concerted" activity, Novelis did not commit an unfair labor practice by demoting Abare. Novelis argues that it ordered a demotion based on the offensive content of Abare's Facebook post and not based on whether the post qualified as "concerted" activity pertaining to the unionization effort. At the time of the demotion, Novelis contends, it did not know whether any company employees had expressed support for Abare's post. Novelis was clearly aware that employees could *view* Abare's post, however, because it was a Novelis employee who brought the post to the company's attention. In sum, we are

satisfied that the record adequately supports the ALJ's findings, accepted by the Board, of unfair labor practices.

### C. Bargaining Order

In *Gissel,* the Supreme Court approved the issuance of a bargaining order in two categories of cases: (1) "exceptional cases marked by outrageous and pervasive unfair labor practices" ("Category I"), and (2) "less extraordinary cases marked by less pervasive practices which nonetheless still have the tendency to undermine majority strength and impede the election processes" ("Category II"). 395 U.S. at 613-14.[7] The Board concluded that Novelis' violations fell within Category II, and that a bargaining order was necessary "to dispel the coercive atmosphere that [Novelis] ha[d] created." A. 1700.

We have repeatedly held that "a bargaining order is a rare remedy warranted only when it is clearly established that traditional remedies cannot eliminate the effects of the employer's past unfair labor practices." *J.L.M., Inc. v. NLRB*, 31 F.3d 79, 83 (2d Cir. 1994). Our case law dictates that a Category II *Gissel* bargaining order is appropriate only when traditional remedies, such as a secret

---

[7] *Gissel* provides that a Category II bargaining order is appropriate only when "there is also a showing that at one point the union had a majority." 395 U.S. at 614. We accept the ALJ's finding that a majority of the eligible employee unit had signed authorization cards before the Union submitted a request for voluntary recognition on January 7, 2014. This fact alone is not dispositive, however, because the Board must also account for significant changes to the workforce that occurred between 2014 and when it issued a bargaining order.

ballot rerun of an election, do not suffice. We have recognized the superiority of, and our preference for, secret ballot elections over bargaining orders. *See, e.g.*, *NLRB v. J. Coty Messenger Serv., Inc.*, 763 F.2d 92, 99 (2d Cir. 1985) ("Our preference is always that the union representative be chosen in a free election."); *HarperCollins San Francisco v. NLRB*, 79 F.3d 1324, 1331 (2d Cir. 1996) (A bargaining order "in lieu of a second election is only proper if, after an objective review of all of the relevant surrounding . . . it may reasonably be concluded that the employees will be unable to exercise a free choice in a Board-supervised rerun election."). *Gissel* itself recognizes that a bargaining order should be issued only when unfair labor practices "make a fair election an unlikely possibility." 395 U.S. at 579. Consequently, the Board carries a heavy burden to justify a bargaining order in lieu of a second election.

Ironically, a bargaining order may unintentionally undermine the employee rights it seeks to uphold. The preference for elections reflects the important policy that employees should not have union representation imposed on them when, by exercise of their free will, they might choose otherwise. Indeed, *Gissel* emphasizes the importance of employee choice: "The Board's authority to issue such an order on a lesser showing of employer misconduct is

18

appropriate, we should reemphasize, where there is also a showing that at one point the union had a majority; in such a case, of course, effectuating ascertainable employee free choice becomes as important a goal as deterring employer misbehavior." 395 U.S. at 614.

Here, the Board did not sufficiently account for employee choice when it afforded far too little weight to changed circumstances in determining whether a rerun election would likely be fair. In June 2015, Novelis moved to reopen the record to introduce evidence of significant employee and management turnover. Novelis then filed supplemental motions in January and August of 2016, further addressing changed circumstances. The Board denied those motions. The Board sought to justify that result by contending that it "does not consider turnover among bargaining unit employees or management officials and the passage of time in determining whether a *Gissel* order is appropriate. . . . Rather, the Board's established practice is to evaluate the appropriateness of a bargaining order as of the time the unfair labor practices were committed."A. 1700 n.17. The Board went on to state that "[e]ven if [it] were to consider [Novelis'] evidence, it would not require a different result." *Id*.

The Board's justifications for denying Novelis' motions to reopen the record and failing to properly consider changed circumstances directly contradict the law of this Circuit. We have held that the relevant circumstances must be measured at the time of the issuance of a bargaining order and not at the time of the election. *See, e.g.*, *NLRB v. Marion Rohr Corp., Inc.*, 714 F.2d 228, 231 (2d Cir. 1983) ("The Board must show that the bargaining order is appropriate when it is issued, not at some earlier date."); *J.L.M.*, 31 F.3d at 84 ("The ultimate analysis must focus on whether a bargaining order is appropriate under the conditions facing the Board at the time of its decision."). Consideration of events occurring after pre-election unfair labor practices are a mandatory part of the analysis even in cases involving much more serious and coercive misconduct than was alleged to have occurred here. *NLRB v. Heads & Threads Co.*, 724 F.2d 282, 289 (2d Cir. 1983). We have consistently vacated Board-issued bargaining orders where the Board failed to consider the impact of changed circumstances, including employee turnover, management turnover, and the passage of time. *See, e.g.*, *HarperCollins*, 79 F.3d at 1332-33; *Kinney Drugs v. NLRB*, 74 F.3d 1419, 1432 (2d Cir. 1996); *J.L.M., Inc.*, 31 F.3d at 83-85; *J. Coty Messenger Serv., Inc.*, 763 F.2d at 100-01; *NLRB v. Windsor Indus., Inc.*, 730 F.2d 860, 866 (2d Cir. 1984); *NLRB v. Pace*

*Oldsmobile, Inc.*, 739 F.2d 108 (2d Cir. 1984); *NLRB v. Knogo Corp.*, 727 F.2d 55 (2d Cir. 1984); *NLRB v. Chester Valley, Inc.*, 652 F.2d 263, 273 (2d Cir. 1981); *J.J. Newberry Co. v. NLRB*, 645 F.2d 148 (2d Cir. 1981); *NLRB v. Jamaica Towing, Inc.*, 632 F.2d 208 (2d Cir. 1980).

In light of that well-established precedent, the Board issuing a bargaining order instead of requiring a new election is not proper. First, the Board did not adequately account for Novelis' remedial actions. The record reflects that Novelis fully complied with the District Court's 10(j) order, which required a public reading of the order to all employees, publication of the order throughout the plant, and reinstatement of Abare. The 10(j) order in and of itself suggests the unlikelihood of reoccurring unfair practices. We are not prepared to presume that a company would commit new violations when faced with an existing federal court order and potential contempt proceedings. Indeed, the Board itself has long held that traditional remedies, such as public readings, are an "effective but moderate way to let in a warming wind of information and, more important, reassurance." *U.S. Serv. Indus., Inc.*, 319 NLRB 231, 232 (1995); *see also N. Mem'l Health Care*, 364 NLRB No. 61 (2016) (ordering reading of public notice "[t]o dissipate as much as possible any lingering effect of [] Respondent's serious and

widespread [unfair labor practices] and enable employees to exercise their Section 7 rights free of coercion . . . .”). Tellingly, although the District Court issued potent remedies, it concluded that a bargaining order was a bridge too far because it did not believe that such an order necessarily best reflected employee choice. *Ley*, 2014 WL 4384980, at *6.

Second, the Board did not account for the passage of two years between the February 2014 election and the Board's decision and order. This failure is critical because a “substantial lapse of time casts doubt on whether the employee preference for the union expressed . . . through authorization cards, still reflect[s the] majority will,” *Knogo Corp.*, 727 F.2d at 60, and also because the passage of time “sheds doubt on the Board's finding that . . . employees continue to feel the effects of the ULPs,” *J.L.M., Inc.*, 31 F.3d at 85. In addition to the possibility that employees may have forgotten the incidents, enough time may have passed to have at least made the chance of a fair rerun election a real possibility.

Third, the Board ignored the turnover of company leadership, merely noting that “[Novelis'] ownership” remains the same and “some” of the management personnel who engaged in unfair labor practices remain employed

by the Company. A. 1700 n.17. Those conclusions are not supported by substantial evidence. Had the Board admitted Novelis' important evidence on this point, it would have had to consider that Martens, the former President and CEO of Novelis and the speaker who made threatening remarks at the meetings, left the Company in April 2015, and that another speaker, Smith, left in April 2016.

Fourth, and most importantly, the Board failed to consider employee turnover since the election. According to Novelis' proffer, between the election and the Board's decision, the Oswego facility expanded into a third production line and hired 255 new employees who would be included in the proposed bargaining unit. Additionally, 84 of the 599 individuals who were eligible to vote in the February 2014 election are no longer in the bargaining unit for reasons including resignation, promotion, or retirement. The expansion and turnover means that approximately one-third[8] of Novelis employees who would be subject to the bargaining order, many of whom had never signed authorization cards, had no connection or exposure to the unfair labor practices. In prior cases, this

---

[8]This percentage was derived by dividing the number of "new" employees at the time of the bargaining order (255) by the total number of employees in the bargaining unit at that time (770). The Union disputes this methodology, and suggests alternative calculations. We need not reconcile these differences because under the calculations proposed by both parties the turnover was significant.

Court found that similar levels of turnover compelled us to deny enforcement of bargaining orders. *See, e.g.*, *Marion Rohr Corp., Inc.*, 714 F.2d at 231 (bargaining order denied due to 35% turnover); *Chester Valley*, 652 F.2d at 263 (34% turnover led to denial of bargaining order).

The significant turnover leads us to conclude that it is inappropriate to impose union membership without a reasoned finding, absent here, that a new, fair election more than three years after the violations is not reasonably possible. We do not for a minute wish to diminish the seriousness of the violations that the Board found and that we uphold. But "[e]ven in the case of serious and coercive unfair labor practices, mitigating circumstances subsequent to the unlawful acts, such as employee turnover or new management, may obviate the need for a bargaining order." *Heads & Threads Co.*, 724 F.2d at 289.

### III. CONCLUSION

Accordingly, we grant in part and deny in part Novelis' petition for review and the Board's cross-petition for enforcement. Specifically, (1) we grant enforcement of the Board's order, except for the portion which concerns Novelis' social media policy, which may be reconsidered on remand; (2) we deny enforcement of the portion of the Board's order which directs Novelis to bargain with the Union; and (3) we remand the case to the Board for further proceedings consistent with this opinion.