23-6526-(L)
*Beyn v. SEC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of January, two thousand twenty-five.

PRESENT:
>    ROBERT D. SACK,
>    SUSAN L. CARNEY,
>    JOSEPH F. BIANCO,
>        *Circuit Judges.*

———————————————————————————

EDWARD BEYN, CRAIG S. TADDONIO,

>    *Petitioners*,

>    v.

UNITED STATES SECURITIES &
EXCHANGE COMMISSION,

>    *Respondent*.

———————————————————————————

23-6526-ag
23-6653-ag

FOR PETITIONERS:        EDWARD BEYN, *pro se*, Dix Hills, New York; CRAIG S. TADDONIO, *pro se*, Babylon, New York.

FOR RESPONDENT:        BROOKE WAGNER, Appellate Counsel (Megan Barbero, General Counsel, Dominick V. Freda, Assistant General

Counsel, Rachel M. McKenzie, Senior Appellate Counsel, *on the brief*), United States Securities and Exchange Commission, Washington, District of Columbia.

**UPON DUE CONSIDERATION** of these consolidated petitions for review of a Securities and Exchange Commission decision, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petitions for review are **DENIED**.

Petitioner Craig S. Taddonio was the co-founder, president, and Chief Executive Officer ("CEO") of Craig Scott Capital, LLC ("CSC"), a brokerage firm registered with the Financial Industry Regulatory Authority ("FINRA"), where petitioner Edward Beyn was employed as a senior broker.   In these consolidated petitions for review, Taddonio and Beyn, both proceeding *pro se*, seek review of an April 19, 2023 Securities and Exchange Commission ("SEC") decision upholding sanctions that FINRA imposed upon them.   FINRA barred Beyn from associating with any FINRA firm in any capacity for trading excessively and churning accounts, as well as making unsuitable investment recommendations.   *See generally In re Edward Beyn & Craig S. Taddonio*, Exchange Act Release No. 97325, 2023 WL 3017562 (Apr. 19, 2023) ("SEC Dec."). It likewise barred Taddonio from associating with any FINRA firms in any capacity both for his failure to supervise trading activity and for giving false testimony to FINRA.   *Id.*

In reviewing a final SEC decision and order under 15 U.S.C. § 78y(a), we may not consider an argument "unless it was urged before the Commission or there was reasonable ground for failure to do so."   15 U.S.C. § 78y(c)(1); *see MFS Sec. Corp. v. SEC*, 380 F.3d 611, 620 (2d Cir. 2004) ("When conducting [a] section 78y review, we are foreclosed from

2

considering arguments not raised before the Commission."). We afford *pro se* litigants "special solicitude" and construe their submissions "liberally," but their *pro se* status "does not exempt [them] from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citations omitted).

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to deny the petitions.

## I.      Sanctionable Conduct[1]

Taddonio contests the SEC's factual determinations that he failed to supervise trading activity and gave false testimony to FINRA. We will affirm the factual findings of the SEC so long as they are supported by substantial evidence. *See Markowski v. SEC*, 34 F.3d 99, 104 (2d Cir. 1994); 15 U.S.C. § 78y(a)(4). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support [the agency's] conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (internal quotation mark and citation omitted). We address Taddonio's arguments regarding failure to supervise and false testimony in turn below.

---

[1] Although Beyn appears to disagree with certain of the SEC's factual findings in his brief, he does not dispute that the record contains substantial evidence supporting the finding that he engaged in excessive trading and churned accounts, and that he gave unsuitable investment advice. We therefore find that Beyn has abandoned any challenge to the SEC's conclusion that he engaged in sanctionable conduct. *See Tripathy v. McKoy*, 103 F.4th 106, 118 (2d Cir. 2024) ("Although we construe *pro se* filings liberally, we need not manufacture claims of error for an appellant proceeding *pro se*." (internal quotation marks and citation omitted)); *Gerstenbluth v. Credit Suisse Sec. (USA) LLC*, 728 F.3d 139, 142 n.4 (2d Cir. 2013) (finding that a *pro se* litigant "waived any challenge" to the district court's adverse ruling because his brief mentioned the ruling only "obliquely and in passing").

3

*A. Failure to Supervise*

Under FINRA Rule 3110, member firms are required to "establish and maintain" a supervisory system "that is reasonably designed to achieve compliance with applicable securities laws and regulations, and with applicable FINRA rules." FINRA Rule 3110(a). The SEC has held that the duty of supervision under this and its predecessor rule includes the responsibility to investigate red flags suggesting irregularities or misconduct and to conduct adequate follow-up and review. *See In re Ronald Pellegrino*, Exchange Act Release No. 59125, 2008 WL 5328765, at*10 (Dec. 19, 2008); *In re Edwin Kantor*, Exchange Act Release No. 32341, 1993 WL 167840, at *5 (May 20, 1993).

Substantial evidence supports the SEC's conclusion that Taddonio failed to appropriately respond to the red flags present in the account activity reports he received. As the president and CEO of CSC, Taddonio supervised brokers and oversaw the firm's trading activity.[2] As part of those responsibilities, Taddonio received several types of reports that showed account activity at CSC, and he engaged in day-to-day review of account activity and discussions with brokers. Those reports revealed that numerous accounts had red flags for excessive trading, including high turnover and cost-to-equity ratios. In addition, Taddonio was aware that customers complained about, and filed arbitration claims against, CSC's brokers for, *inter alia*, excessive trading. Nevertheless, Taddonio did not timely act on apparent issues and areas of concern, and failed to institute measures to effectively curb the excessive trading.

---

[2] Taddonio's suggestion that compliance officers, not he, directly supervised brokers is unpersuasive. As the SEC found, the record clearly demonstrates that Taddonio retained ultimate responsibility for supervising trading activity at CSC.

4

### B. *False Testimony*

Substantial evidence also supports the SEC's finding that Taddonio gave false testimony at a March 2015 on-the-record interview with FINRA investigators. Although Taddonio stated under oath that the firm did not have recording devices and that he and his staff did not record calls with customers, evidence to the contrary included emails and receipts from Taddonio demonstrating that phone calls with customers were recorded and that CSC had purchased recording devices, photographs showing recording devices on brokers' desks, and testimony explaining that thousands of audio files on CSC's server were lost or deleted.

Accordingly, we find no ground on which to disturb the SEC's factual findings with respect to the sanctionable conduct.

### II. Appropriateness of the Sanctions

Both Beyn and Taddonio argue that the sanctions were excessive, oppressive, and punitive, and thus cannot be upheld under applicable law. We disagree. We review the SEC's decision to sustain the sanctions imposed by a self-regulatory organization, such as FINRA, for abuse of discretion, overturning the decision only if it is "unwarranted in law or without justification in fact." *McCarthy v. SEC*, 406 F.3d 179, 188 (2d Cir. 2005) (alteration adopted) (internal quotation marks and citation omitted). We generally will find an abuse of discretion in "either a sanction palpably disproportionate to the violation or a failure to support the sanction chosen with a meaningful statement of findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." *Id.* (internal quotation marks and citation omitted). Because "the purpose of expulsion or suspension from trading is to protect investors, not to penalize brokers," our "foremost

5

consideration" must be whether the "sanction protects the trading public from further harm." *Id.* Relevant factors include the "seriousness of the offense, the corresponding harm to the trading public, the potential gain to the broker for disobeying the rules, the potential for repetition in light of the current regulatory and enforcement regime, and the deterrent value to the offending broker and others." *Id.* at 190.

### A. Beyn

The SEC did not abuse its discretion by upholding the sanction against Beyn. It concluded that a bar in all capacities was appropriate because Beyn acted with scienter and aggravating factors predominated. In particular, the evidence showed that Beyn deliberately misled his clients about their investments, some of which were particularly risky and inappropriate for unsophisticated investors who were entrusting their life savings to the firm. That evidence was sufficient to justify the sanctions imposed against Beyn.

Beyn complains that individuals in other cases received less severe sanctions. However, "[t]he employment of a sanction within the authority of an administrative agency is [] not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases." *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 187 (1973). We have emphasized the "limited benefit" offered by these comparisons, "due to the highly fact-dependent nature of the propriety of sanctions." *McCarthy*, 406 F.3d at 188. Such is the case here. The decisions Beyn cites are not substantially similar, as they involved negotiated settlements or very different factual circumstances. "That those dissimilar facts resulted in dissimilar sanctions" therefore does not "show that the sanction imposed was impermissibly disproportionate." *D'Alessio v. SEC*, 380 F.3d 112, 125 (2d. Cir. 2004).

*B. Taddonio*

FINRA issued two separate sanctions against Taddonio: a bar in all capacities for his supervisory violations and a bar in all capacities for giving false testimony. The SEC did not abuse its discretion by upholding either sanction based upon, *inter alia*, the seriousness of Taddonio's offenses, the harm caused by his conduct, and the need to protect the investing public from future harm. More specifically, Taddonio's supervisory violations were aggravated by his failure to act despite clear and numerous red flags in CSC's account activity, which resulted in millions of dollars in losses for investors. Taddonio's false statements to FINRA about the recording devices also warranted a significant sanction because they obstructed FINRA's investigation into CSC.

Like Beyn, Taddonio contends that the SEC's sanctions were too harsh in light of those given to other individuals. As discussed above, however, we give little weight to the comparator cases cited by Taddonio because, like those cited by Beyn, they are disparate in facts and circumstances as compared to the case here.

**III. Fairness of the Proceeding**

Beyn and Taddonio raise various challenges to the fairness of the FINRA proceedings.[3] We find each of the challenges to be without merit.

*A. Consolidation*

Beyn argues that consolidation of his case with Taddonio's below was prejudicial.

---

[3] Beyn also argues that FINRA's hearing structure is unconstitutional. We decline to consider this argument because it was not raised before the SEC. *See Gonnella v. SEC*, 954 F.3d 536, 543–46 (2d Cir. 2020) (concluding that this Court could not consider constitutional claims in appeal of SEC decision where such claims were not raised before the SEC).

However, FINRA Rule 9214 permits consolidation in cases involving "common questions of law or fact" or where consolidation would conserve time and resources. FINRA Rule 9214(a), (b). The record reflects that the hearing officer considered the relevant factors, and Beyn has not otherwise pointed to evidence that the proceedings against him were tainted by the inclusion of evidence against Taddonio.

### B. Discovery

Beyn and Taddonio both contend that they were prejudiced by their inability to access the document production provided by FINRA. However, they had months to review the documents and raise objections to the hearing panel before the hearing. They also received an additional thirty days after the hearing to add to the record and recall witnesses. Moreover, the hearing panel ordered FINRA to provide technical support to the petitioners to facilitate their access to the documents.[4] Importantly, nearly eight years later, neither Beyn nor Taddonio has pointed to any specific record either could have used to strengthen their defense. Thus, they have failed to demonstrate that they were prejudiced by any discovery issues in the FINRA proceedings.

### C. Evidentiary Rulings

Taddonio also challenges several of FINRA's evidentiary rulings that were upheld by the SEC. We review an agency's evidentiary determination for abuse of discretion. *See Novelis Corp. v. NLRB*, 885 F.3d 100, 106 (2d Cir. 2018) (reviewing the NLRB's "evidentiary rulings

---

[4] During oral argument, Beyn contended that the technical support employees he worked with were unable to provide access to the documents. He was unable, however, to point to any instance in which he notified the hearing panel of his continued issues accessing the documents or requested an extension of the thirty-day period.

for abuse of discretion"); *accord Fitzpatrick v. SEC*, 63 F. App'x 20, 21 (2d Cir. 2003) (summary order) (finding that the SEC's refusal to overturn evidentiary rulings by NASD (FINRA's predecessor organization) "was not an abuse of discretion"). Here, we find that the SEC acted well within its discretion with respect to the challenged evidentiary determinations.

First, Taddonio argues that FINRA's cycle-exam exit letters should have been included in the record because they show that CSC was in compliance with applicable trading regulations. However, the fact that FINRA's usual examination did not uncover a specific violation is not tantamount to a finding that the petitioners had not committed violations. *Cf. Boruski v. SEC*, 289 F.2d 738, 740 (2d Cir. 1961) (finding that NASD's "failure . . . to advise petitioner of non-compliance" did not "operate as an estoppel or an implied admission that his books were in approved form"). Nor does it undermine the substantial evidence in the record of churning, excessive trading, and failure to supervise.

Taddonio next contends that CSC's default in the FINRA proceedings was improperly included in evidence. As the SEC pointed out, however, the National Adjudicatory Council ("NAC") did not rely on CSC's default.

Taddonio further asserts that he was prejudiced by the testimony of Beyn and another former CSC trader. That argument is likewise unavailing because the SEC did not rely on either employee's testimony because "ample other evidence support[ed] [FINRA's] conclusion."[5]

---

[5] Taddonio also argues here for the first time that the record includes only some, but not all, confirmations for trades at issue. We cannot consider this argument because Taddonio did not raise it before the SEC or offer any reasonable ground for his failure to do so. *See* 15 U.S.C. § 78y(c)(1); *MFS Sec. Corp.*, 380 F.3d at 620.

SEC Dec. at A29.

### D. Withdrawal of Appeal

Taddonio argues that the NAC violated FINRA's rules by failing to permit him to withdraw the portion of his appeal regarding his failure to supervise. We disagree. The record shows that Taddonio was correctly informed that the partial withdrawal would be futile in light of the fact that the NAC could review that portion of the appeal of its own volition. *See* FINRA Rule 9312(d) (providing a member of the NAC "the right to call for review [of] a decision issued" by the hearing panel even when "all appealing Parties file a notice of withdrawal of appeal"). Taddonio ultimately elected not to withdraw his appeal.[6]

### E. Dual Role of FINRA's Staff Attorney

Finally, Taddonio questions the appropriateness of a FINRA staff attorney's purported dual role as both an adjudicator during the NAC hearing and an advocate for FINRA before the SEC. Taddonio does not articulate, however, how he was prejudiced as a result. Nor could he—"because the SEC conducted a thorough, de novo review of the record, any procedural errors that may have been committed [below] are cured." *Heath v. SEC*, 586 F.3d 122, 142 (2d Cir. 2009).

---

[6] To the extent Taddonio also argues that the NAC, in reviewing the hearing panel's decision, erred procedurally by increasing the sanction for his failure to supervise, that argument is similarly unavailing. FINRA Rule 9348 expressly permits the NAC to "affirm, modify, reverse, *increase*, or reduce any sanction . . . or impose any other fitting sanction" in "any appeal or review proceeding." FINRA Rule 9348 (emphasis added).

\*     \*     \*

We have considered Beyn's and Taddonio's remaining arguments and find them to be without merit.   Accordingly, we **DENY** the petitions for review.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11